UNITED STATES of America,
Plaintiff–Appellee,

v.

Terrell COLEMAN, Carvester Carver,
and Roy Evans, Defendants–
Appellants.

Nos. 97–1327, 97–1350 and 97–3623.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1999.[1]

Decided June 11, 1999.

Rehearing Denied Aug. 10, 1999.

1. Appeal No. 97–3623 was submitted for decision without argument.

Joseph R. Wall (argued), thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Patrick C. Brennan (argued), Brennan, Ramirez, Wilmouth & Sesini, Milwaukee, WI, for Coleman.

Daniel D. Resheter, Jr. (argued), Milwaukee, WI, for Carver.

Victor E. Plantinga, Blumenfeld, Rose & deJong, Brookfield, WI, Roy Evans, Belmount, TX, for Evans.

Before BAUER, ROVNER, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Appellants were convicted of various offenses related to a drug conspiracy. On appeal, Terrell Coleman ("Coleman") claims that there was insufficient evidence to support his conviction. Carvester Carver ("Carver") argues that his conviction should be reversed because the district judge improperly admitted evidence of other acts under Federal Rule of Evidence 404(b). Coleman and Carver also challenge their sentences, contending that the district court erred in calculating their relevant conduct. Finally, counsel for Roy Evans ("Evans") submitted an Anders Brief, asserting that Evans has no non-frivolous grounds for appeal. We affirm the district court's judgment in all respects.

## I. BACKGROUND

In March of 1996, a federal grand jury sitting in the Eastern District of Wisconsin returned a thirteen-count superseding indictment against Coleman, Carver, Evans, and several others. The indictment charged the appellants with conspiracy to possess with intent to distribute cocaine, and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 846, and 18 U.S.C. § 2. These charges stemmed from an alleged 1988–1995 conspiracy headed by Jerry Walker ("Walker").

The events leading up to the indictment are typical. On October 21, 1992, officers of the Milwaukee County Sheriff's Department executed a search warrant at a house at 2550 North 23rd Street in Milwaukee. When the police forced their way into the house, they found Coleman pointing a rifle at them. After arresting Coleman in the bedroom, the police found $748 in cash on the bed, another $875 on a night stand, and $47 in a can on top of the T.V. Also in the bedroom, they found a box of sandwich bags, some ammunition, and some personal papers of Coleman's. In the rest of the house, agents found another $1,000, a baggie containing approximately 13.9 grams of cocaine, paper bindles, ammunition, and two scales. Carver and Evans were also at the house.

On October 8, 1993, the police executed another search warrant, this time at a house at 2420 West Wright Street. Before entering the house, detectives observed Coleman participating in what appeared to be two drug deals. Twice, Coleman was approached by an individual just outside the house. Each time, the individual gave Coleman some money which Coleman then took into the house. When Coleman emerged, he handed the individual an object, and the individual left. After observing these transactions, the police approached the house and identified themselves. Coleman jumped off the porch and started running. He was quickly caught.

When the police entered the house, they found a shoebox on the steps leading up to the second floor. The shoebox contained approximately $4,800 in cash, a loaded 9 mm. handgun, and 12 baggies filled with approximately 43.5 grams of white powder. Elsewhere in the house, the police found a shotgun, ammunition, a walkie talkie, a cell phone, and Coleman's social security card. The keys to the outer and inner doors of the house were on Coleman's person.

Detective Lawrence DeValkenaere ("DeValkenaere") performed a cobalt thiocyanate field test on the powder from 3 of the baggies found in the shoebox. The samples tested positive for cocaine. DeValkenaere later testified that the powder in all 12 baggies was consistent in color, texture, and aroma. He also testified, based on his training and experience, that the white powder in the baggies was cocaine. The powder was never tested by a crime lab, however, because the district attorney de-

clined to charge Coleman and the powder was subsequently destroyed.

On December 2, 1994, Milwaukee County deputies stopped Carver at General Mitchell International Airport before he boarded a plane to San Francisco. A search revealed that Carver had hidden $30,000 in cash under his spandex pants. Carver also carried scraps of paper on which he had written phone numbers associated with one of Walker's suppliers. The police took the money and gave Carver a receipt. In January of 1995, a DEA informant overheard Walker talking about the arrest. Walker stated that the money was his and that he had the receipt that indicated that Carver had been stopped while in possession of the money.

On January 17, 1995, the police conducted surveillance at 2622A West Medford Avenue in Milwaukee. They observed Carver standing on the street in front of the house directing individuals to a man named Tommy Davis ("Davis"), who would remove something from a film canister and give it to the individual in exchange for money. The police moved in to arrest everyone at the house. They found 50 rocks of crack cocaine in Davis' pocket, 26 rocks in the film canister, and another 50 rocks in the house. Davis also had $419 in cash on his person. Carver and Davis carried walkie talkies tuned to the same frequency.

On November 14, 1995, a DEA informant made a controlled purchase of two ounces of crack cocaine from Walker, Evans, and Coleman. After the informant placed his order with Walker, Walker told Evans and Coleman that the informant wanted "two of them." Evans and Coleman then left together and returned a short while later with the crack. Evans gave the crack to Walker. After the informant gave Evans $2,400, Walker handed over the drugs. Coleman was captured on tape saying: "That's real real pretty. Under my ... tutelage you did all right." Evans and Coleman then began to argue about who had taught whom how to prepare crack cocaine. The appellants were indicted shortly after this controlled buy.

Coleman and Carver, along with Walker, were tried before a jury beginning on October 28, 1996. The government presented evidence describing the drug busts at 2550 North 23rd Street, 2420 West Wright Street, and 2622A West Medford Avenue, as well as evidence of Carver's arrest at the airport, and the controlled purchase from Coleman, Evans, and Walker. In addition, several co-conspirators testified about Coleman's and Carver's involvement in the Walker conspiracy. For example, Tony Walton ("Walton") testified that he, Coleman, and Carver worked under the supervision of Evans. Walton related that the three broke down kilos of cocaine together and then sold ounces of the cocaine out of drug houses. Richard Bivens ("Bivens") testified that he both delivered cocaine to and bought cocaine from Coleman. Bivens also testified that he had observed Carver helping Evans break down kilos of cocaine on a number of occasions, and that Carver appeared to be with Evans all the time. Shawn Ollins ("Ollins") testified that on one occasion, he bought cocaine from Coleman for $23,000, and that Coleman was present when Ollins bought drugs from Evans on other occasions. At the close of the government's case, Coleman made an unsuccessful motion for a judgment of acquittal.

On November 14, 1996, the jury found Coleman guilty of one count of conspiracy to distribute cocaine, and three counts of possession with intent to distribute cocaine. The jury found Carver guilty of one count of conspiracy, but not guilty of possession with intent to distribute. On November 21, 1996, Coleman filed another motion for a judgment of acquittal. Again, the district judge denied the motion. On February 5, 1997, the judge found that both Coleman and Carver were responsible for 15–50 kilograms of cocaine. Accordingly, he sentenced them to 240 months and 188 months of imprisonment respectively.

Evans was tried separately in a jury trial that began on March 3, 1997. At trial, a DEA informant testified that he had taken part in five deliveries of cocaine involving Evans. This testimony was corroborated by recordings and photographs of the transactions. The government also presented evidence gathered during the October 21, 1992 search of 2550 North 23rd Street. Finally, several of Evans' coconspirators testified about Evans' involvement in the conspiracy, and the quantity of cocaine that he helped to distribute. On March 6, 1997, the jury found Evans guilty of one count of conspiracy to distribute and six counts of possession with intent to distribute cocaine. The judge found that he was responsible for 50–150 kilograms of cocaine and sentenced him to 360 months of imprisonment.

## II. DISCUSSION

### A. Sufficiency of the Evidence to Sustain Coleman's Conviction

██ Coleman challenges the sufficiency of the evidence with respect to Counts 5 and 10. In doing so, he "faces a nearly insurmountable hurdle ... [in that] we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Szarwark*, 168 F.3d 993, 995 (7th Cir.1999) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997)).

Count 5, which charged Coleman with possession with intent to distribute cocaine, arose from the execution of the search warrant at 2420 West Wright Street. Coleman contends that the government failed to introduce sufficient evidence to prove beyond a reasonable doubt that the 43.5 grams of white powder recovered during the search was actually cocaine. Coleman points out that no crime lab test was ever conducted to confirm the positive results of the field test. He argues that the field test results, without

more, were insufficient to prove beyond a reasonable doubt that the substance was cocaine.

We need not decide whether the field test alone would have been sufficient, however, because in this case, the government also presented circumstantial evidence that the white powder was cocaine. In addition to the twelve baggies, the shoebox contained $4,800 in cash, and a loaded gun. Detective DeValkenaere testified that the white powder looked and smelled like cocaine. Just before the search warrant was executed, the police observed Coleman in front of 2420 West Wright Street engaging in what appeared to be two drug transactions. Coleman's co-conspirators testified that Coleman sold cocaine out of 2420 West Wright Street. And finally, a DEA informant bought cocaine from Coleman at that address.

██ As Coleman admits, the identity of a drug may be established solely by circumstantial evidence. *See United States v. Murray*, 753 F.2d 612, 615 (7th Cir. 1985) (identification of the substance as marijuana by co-conspirators, high price charged for the substance, and covert nature of purchases were sufficient to support a finding that the substance was marijuana). Here, the circumstantial evidence was accompanied by the results of a cobalt thiocyanate test, the reliability of which has not been challenged on appeal. The circumstantial evidence and the field test results were sufficient to allow a reasonable jury to find that the substance recovered during the search of 2420 West Wright Street was cocaine.

██ Coleman next challenges the sufficiency of the evidence with respect to Count 10, which also charged him with possession with intent to distribute cocaine. This count was based on the DEA informant's controlled purchase of cocaine from Walker, Evans, and Coleman on November 14, 1995. Coleman contends that the government proved only that he was present during the November 14, 1995

transaction. The government argues that the evidence showed more than mere presence, and contends that at the very least it presented sufficient evidence to prove that Coleman aided and abetted the transaction. "[A]n aider and abettor may be punished with the same severity as a principal." *United States v. Corral–Ibarra,* 25 F.3d 430, 436 (7th Cir.1994). *See also* 18 U.S.C. § 2(a).

■ To sustain the conviction under a theory of aiding and abetting, we must find that the government proved that Coleman knowingly participated in the transaction as "something he wished to bring about" and that he "sought by his actions to make it succeed." *United States v. Lewis,* 117 F.3d 980, 985 (7th Cir.1997) (internal quotation marks and citations omitted). "Participation may be established by circumstantial evidence, and the evidence may be of relatively slight moment." *United States v. McKneely,* 69 F.3d 1067, 1072 (10th Cir.1995). Nonetheless, mere presence is insufficient to support a conviction for possession with intent to distribute cocaine. *See United States v. Stewart,* 145 F.3d 273, 277 (5th Cir.1998); *United States v. Montilla–Rivera,* 115 F.3d 1060, 1064 (1st Cir.1997).

In this case, Coleman was not simply passively present during the transaction. Rather, he left with Evans to retrieve the cocaine, and returned with Evans to complete the transaction. Furthermore, during the transaction, Coleman and Evans discussed, albeit briefly, the fact that Evans had done a good job "cooking" the cocaine under Coleman's "tutelage." Given this statement, the jury could have concluded that Coleman supervised the preparation of the crack, or that he was talking up the quality of the cocaine in order to facilitate the sale. Although the evidence is not overwhelming, it is not so spare that we will disturb the jury's verdict.

Because we conclude that there was sufficient evidence to support Coleman's conviction of Counts 5 and 10, we need not address Coleman's claim that the submission of these counts to the jury prejudiced the jury's deliberations with respect to the conspiracy charge.

## B. Evidence of Other Acts by Carver

■ Carver argues that his conviction should be reversed because the district court improperly allowed the police to testify that he had been observed participating in drug transactions at 2622A West Medford Avenue on January 17, 1995, and that he was arrested that day. The district court admitted the evidence under Federal Rule of Evidence 404(b) for the purpose of showing Carver's intent to join the conspiracy. We review the district court's determination for abuse of discretion, noting that "[a]ppellants who challenge evidentiary rulings of the district court are like rich men who wish to enter the Kingdom: their prospects compare with those of camels who wish to pass through the eye of the needle." *United States v. Emenogha,* 1 F.3d 473, 477 (7th Cir.1993) (citing *United States v. Glecier,* 923 F.2d 496, 503 (7th Cir.1991)). See Matthew 19:24.

■ Rule 404(b) states in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b). Evidence of other acts is admissible under Rule 404(b) if: "(1) it is directed toward establishing a matter other than the defendant's propensity to commit the crime, (2) the evidence was sufficient to support a jury finding that the defendant committed the similar act, (3) the other act is similar enough and close enough in time to be relevant to the matter in issue, and (4) the probative value is not substantially outweighed by the danger of unfair prejudice." *Emenogha,* 1

F.3d at 478. *See also United States v. Lewis*, 110 F.3d 417, 420 (7th Cir.1997). In this case, the parties agree that the first three prongs have been met. The only issue is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

■ At the outset, we note that "all probative evidence is prejudicial to the party against whom it is introduced." *United States v. Adames*, 56 F.3d 737, 742 (7th Cir.1995). Therefore, our focus must be on *unfair* prejudice. *Id.* "Unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *See Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).

In this case, evidence of Carver's activities at 2622A West Medford Avenue was probative of his intent to participate in the conspiracy to distribute cocaine. Moreover, the evidence in question was a drop in the fairly large bucket of evidence of Carver's involvement in drug trafficking. Thus, any prejudice was harmless. Also, the district judge instructed the jury to consider the evidence only for the purpose of determining Carver's intent. (Tr. vol. 18 at 2063.) This limiting instruction served to minimize the potential for prejudice. *See Lewis*, 110 F.3d at 420–21. For these reasons, the district judge did not abuse his discretion in admitting evidence of Carver's January 17, 1995 arrest.

## C. Relevant Conduct

■ Both Coleman and Carver challenge the district court's calculation of their relevant conduct under section 1B1.3 of the Sentencing Guidelines. U.S.S.G. § 1B1.3. They argue that the lower court erred in finding them each responsible for 15–50 kilograms of cocaine. A sentencing court's attribution of cocaine to a defendant is a factual finding that we review for clear error. We will disturb such findings "only if after reviewing the entire record, we are left with the firm and definite conviction that a mistake has been made." *Corral–Ibarra*, 25 F.3d at 437.

### 1. Coleman

■ Coleman's challenge can be quickly disposed of. He argues that he should not have been held responsible for 15–50 kilograms of cocaine when some of his more culpable co-defendants were held responsible for the same amount of cocaine or less. However, the co-defendants to whom Coleman refers pled guilty, and their cooperation agreements prevented the government from using their statements to enhance their relevant conduct. Therefore, the conduct attributed to Coleman's co-defendants did not accurately reflect their actual responsibility. For this reason, the disparity in relevant conduct does not show that the sentencing judge's calculation of Coleman's relevant conduct was clearly erroneous.

### 2. Carver

■ The Sentencing Guidelines provide that, in calculating relevant conduct, a sentencing court must consider, among other things:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

U.S.S.G. § 1B1.3(a)(1). The Guideline notes further explain that, in a conspiracy situation, a defendant is accountable for the conduct of others if the conduct was "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1), Application Note 2.

At Carver's sentencing hearing, the judge noted that Carver had stipulated that the $30,000 he was carrying when he was arrested at General Mitchell International Airport was enough to purchase 2 kilos of cocaine. The judge extrapolated from this figure, and concluded that given Carver's three and a half to five year participation in the conspiracy, he could reasonably have foreseen the distribution of 15–50 kilograms of cocaine.

Carver takes a different tack. He calculates that the incidents at 2550 North 23rd Street, 2622A West Medford Avenue, and the General Mitchell International Airport account for no more than 3 kilograms of cocaine. He argues that this number should be minimally increased to 3.5–5 kilograms to account for his long involvement in the conspiracy. But he contends that anything more than 5 kilograms is not warranted given his minor role in the conspiracy. This argument is unpersuasive. Carver does not dispute the presentence report's finding that the conspiracy was responsible for the importation and distribution of 300–400 kilograms of powder cocaine. The sentencing judge found that, given Carver's involvement in the conspiracy, 15–50 kilograms of this total was reasonably foreseeable by Carver. This finding was not clear error.

### D. Evans' Anders Brief

 Evans' attorney asserts that there are no nonfrivolous grounds for appeal, and seeks to withdraw from the case. Since the Anders Brief he submitted is sufficient on its face, we consider only those issues raised in the brief and in Evans' response. *United States v. Wagner,* 103 F.3d 551, 553 (7th Cir.1996). Having carefully reviewed all the materials submitted, we find that there are no nonfrivolous grounds for appeal.[2] Since an

appeal would be frivolous, Evans is not entitled to new counsel.

### CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED in all respects, the motion of Evans' attorney to withdraw is GRANTED, and Evans' request for new counsel is DENIED.

---

**2.** It is unclear whether Evans' response to the Anders Brief raises an ineffective assistance of counsel claim or merely notes that Evans intends to raise such a claim in other proceedings. To the extent that he does assert ineffective assistance of counsel, we decline to address the issue on direct appeal since determination of such claims requires us to consider evidence that is outside the trial record. *United States v. Brooks,* 125 F.3d 484, 495 (7th Cir.1997).