**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dexter R. HEATH, Defendant–Appellant.**

**No. 98–3484.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1999.

Decided Aug. 26, 1999.

---

Andrew B. Baker, Jr. (argued), Office of the United States Attorney, Dyer, IN, for Plaintiff–Appellee.

Richard H. Parsons, Gary T. Bell (argued), Office of the Public Defender, Peoria, IL, for Defendant–Appellant.

Before CUDAHY, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Dexter Heath was convicted by a jury of two counts of possession with intent to distribute controlled substances (crack cocaine and powder cocaine) and one count of using a firearm in relation to drug trafficking. During the trial, the district court admitted evidence of an earlier incident at which Mr. Heath was in the company of others, one of whom possessed crack cocaine. Mr. Heath challenges the district court's admission of that evidence of the prior crime pursuant to Federal Rule of Evidence 404(b).[1] He also appeals the court's inclusion of the quantity of drugs found in the prior incident when it calculated the base offense level, which yielded a sentence of 195 months in prison. For the reasons that follow, we reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

# I

## BACKGROUND

### A. Facts

On May 17, 1997, around 11:30 p.m., Dexter Heath was sitting in the passenger seat of a pickup truck behind a Ponderosa Restaurant in Gary, Indiana. It was closing time. Gary Police Officer John Breese was patrolling the parking lot. When he asked for some identification, Mr. Heath produced a valid Indiana identification card and said he was waiting for the driver, who was in the restaurant. A few minutes later, Officer Breese saw Mr. Heath driving the truck away. The officer, knowing that an Indiana resident could not lawfully possess both an Indiana identification card and an Indiana driver's license,[2] activated his police lights and pursued the pick-up. When the truck accelerated, a high-speed chase began; other police cars joined the pursuit. Eventually the truck was blockaded at a highway intersection by the police cars. Mr. Heath tried to flee; there was a scuffle, but he then was subdued, handcuffed, arrested and searched. The officers found two handguns on Mr. Heath and, nearby, a yellow pill bottle which had bounced out of Mr. Heath's baseball cap when the cap hit the ground. In the pill bottle were 12 blue

---

1. Rule 404(b) of the Federal Rules of Evidence provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. A state-issued identification card is used for identification purposes by people without a driver's license, including those not eligible to obtain a driver's license. It is issued by the Bureau of Motor Vehicles to any Indiana resident who applies and is at least 14. *See* Ind.Code § 9–24–16–1. It is not used to identify the person holding the card as a valid operator of a motor vehicle. *See* Ind.Code § 9–24–16–11.6.

plastic baggies of what tests later revealed to be crack cocaine (a total of .76 grams) and 20 clear baggies of powder cocaine (a total of 1.7 grams).[3] Mr. Heath was taken to a hospital in Gary for testing; his blood tested positive for cocaine and marijuana.

Mr. Heath was charged with drug possession with intent to distribute and with carrying a firearm in relation to drug trafficking. He pleaded not guilty, claiming that he was a drug user and that he lacked any intent to distribute drugs. The jury trial began May 11, 1998.

## B. Determinations of the District Court

Before trial, Mr. Heath filed a motion in limine to prevent the government from presenting certain evidence, including evidence of Mr. Heath's involvement in an uncharged prior incident on October 30, 1996, which led to his arrest for possessing a handgun. The government responded with its notice of intent to use that incident as evidence of prior bad acts under Federal Rule of Evidence 404(b). The event at issue occurred on October 30, 1996, 7½ months before the Ponderosa Restaurant incident for which Mr. Heath was on trial. On that day, two Gary police officers approached Mr. Heath and Michael Cannon, who were standing outside a home in Gary with three or four other people. The police officers searched Cannon and found a 35.1-gram rock of crack cocaine, empty blue plastic baggies, and two small baggies with rock cocaine in Cannon's mouth. The officers searched Mr. Heath as well. They found on him a semi-automatic handgun and $209; he also was wearing a bulletproof vest. They arrested Mr. Heath for possession of the handgun and Cannon for possession of the crack cocaine.

In its initial pretrial ruling, the district court granted in part Mr. Heath's motion to keep out evidence of his prior arrest.[4] At the end of the first day of trial, however, the government again sought the admission of the evidence of Mr. Heath's arrest on October 30, 1996, to prove that Mr. Heath was "working in conjunction with someone who is distributing," namely Cannon, and "protecting him while this person distributes crack cocaine." Tr. at 172. The prosecutor asserted that Mr. Heath, wearing a bulletproof vest and carrying a gun, was "aiding and abetting in that distribution," and that the prior incident showed "Mr. Heath's intent to distribute in this case," that is, on the evening of May 17, 1997. Tr. at 181–82. Defense counsel objected on the ground that Mr. Heath was never charged with drug delivery or distribution and that the evidence was irrelevant, dissimilar from the offense before the jury, and prejudicial.

The district court determined that the evidence of the October 30, 1996 incident and arrest was similar enough and close enough in time to the May 17, 1997 arrest to be relevant to Mr. Heath's intent to distribute on May 17, 1997. It also ruled that the evidence of the prior act was sufficient to support a jury finding that the defendant committed the similar act. Finally, the court determined that the probative value of the evidence of the prior act was not substantially outweighed by the danger of unfair prejudice. Because, in its view, the evidence met the four-prong test of Rule 404(b), the court held that it was admissible. Nevertheless, the court also agreed to give a limiting instruction prior to the admission of the evidence. The jury

---

3. These small baggies are called "dime" bags because they contain about ⅒ gram of the drug and sell for about $10 on the street.

4. The court ruled:
 Defendant's Motion in Limine, I granted it in part. As we've just said, any mention of his prior contacts with law enforcement is just not relevant at this stage. Of course,

these are preliminary orders, preliminary rulings. If at any time counsel for either side feels that these things become relevant, then out of the presence of the jury, I need to—you need to get my attention and then I'll hear what you have to say.
 Tr. vol. III at 21–22.

returned a guilty verdict on all counts on May 12, 1998.

At sentencing, on September 29, 1998, Mr. Heath objected to the inclusion of the 35.1 grams of crack cocaine that Cannon possessed in the October 30 incident as relevant conduct. The court overruled his objections and held that the evidence from the October 30 incident was relevant conduct because it was part of a common scheme and was close enough in time to the present offense of conviction. Adopting the calculations of the PSR, the court sentenced Mr. Heath to 195 months in prison.

# II

## DISCUSSION

### A. Rule 404(b) Evidence

#### 1.

Mr. Heath submits that the district court erred in admitting evidence of the prior October 30, 1996 incident in the jury trial pursuant to Rule 404(b). According to Mr. Heath, the evidence in the case for which he was on trial demonstrates merely that on May 17, 1997, he possessed only a small amount of crack and of cocaine powder, the amount an addict could consume in a day. His defense at trial was that he was a drug user and buyer, not a seller, and that he lacked the intent to distribute. He asserts that, because the police had not found on him any drugs or drug paraphernalia on October 30, 1996, and because there is no evidence that he engaged in any drug dealing or had any relationship to Michael Cannon, the one who possessed the cocaine rock, the court erroneously admitted irrelevant and highly prejudicial evidence against him. Mr. Heath explains that he was merely present during the October 30 incident. He further points out that the government's ability to prove that he intended to distribute drugs, rather than to use them for his own consumption, was quite weak without the evidence of the 35.1–gram rock of crack cocaine that Cannon possessed on October 30. Thus

the admission of that Rule 404(b) evidence, Cannon's 35.1 grams of crack cocaine, greatly prejudiced him.

The government responds that the district court did not abuse its discretion in admitting evidence of the prior incident to prove Mr. Heath's intent to distribute cocaine 7½ months later, on May 17, 1997. According to the government, the evidence certainly showed his involvement in a prior drug offense—his aiding and abetting Cannon's crack cocaine dealing. As the government saw it, Cannon possessed the crack for distribution, and Mr. Heath had the money ($209), the handgun and the bulletproof vest to guard the drug dealer. The government concluded that it had proved, by a preponderance of the evidence, that Mr. Heath aided and abetted Cannon's possession with intent to distribute cocaine on October 30, 1997. Thus, the district court did not abuse its discretion in admitting the evidence, it urges us to conclude.

#### 2.

 The district court's evidentiary rulings are matters within the court's discretion; we overturn them only when the court has abused that discretion. *See United States v. Robinson*, 161 F.3d 463, 466 (7th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1482, 143 L.Ed.2d 565 (1999). "Under this deferential standard, we ask whether the district court made a decision that was within the range of options from which we might expect a reasonable trial jurist to choose under the circumstances." *United States v. Allison*, 120 F.3d 71, 74 (7th Cir.) (citing cases), *cert. denied*, —— U.S. ——, 118 S.Ct. 455, 139 L.Ed.2d 389 (1997). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). As *Huddleston* explains, Rule

404(b) evidence is admissible only if it is relevant, and "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.* at 689, 108 S.Ct. 1496.

■ The district court admitted the evidence of a prior crime by applying the traditional four-part test fashioned to determine the appropriateness of admitting evidence of other crimes or acts. Under this test, evidence of prior acts is admissible when:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Asher,* 178 F.3d 486, 492 (7th Cir.1999); *see also United States v. Gregory,* 74 F.3d 819, 822 (7th Cir.1996). The last prong in the analysis incorporates evidentiary rule 403 by excluding relevant evidence for reasons of prejudice, confusion, or waste of time. *See Robinson,* 161 F.3d at 467.

After hearing the arguments of counsel, the district court without analysis determined that the evidence of Mr. Heath's involvement in the earlier crime satisfied the Rule 404(b) test: The prior act was similar enough and close enough in time to be relevant; the evidence was sufficient to support a jury finding that the defendant committed the similar May 17, 1997 act; and the evidence was more probative than prejudicial. Mr. Heath claims that the district court erred in finding that the third prong was satisfied. According to the defendant, the record contains no evidence that a drug transaction occurred or that Mr. Heath sold, bought, or participat-

ed in the distribution of any drugs. There is no evidence that money exchanged hands or that Mr. Heath protected Cannon. Cannon had drugs on his person, but there is absolutely no evidence that Mr. Heath was aiding and abetting Cannon in any transaction. The government contends that Mr. Heath was indeed aiding and abetting Cannon by protecting him and his drugs.

■ The government must demonstrate "aiding and abetting" by showing that the defendant associated himself with the activity at issue and participated voluntarily in it; moreover, the government must show that his conduct demonstrated that he tried to make the activity succeed. *See United States v. Sewell,* 159 F.3d 275, 278 (7th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1089, 143 L.Ed.2d 90 (1999). In order to show that the defendant associated himself with the act, the prosecutor "must show that the defendant shared the principal's criminal intent." *Id.* To show the defendant's participation in the activity, it must present evidence that the defendant affirmatively acted to make the venture succeed. Two types of conduct that fail to prove aiding and abetting are "mere presence" and "guilt by association." *Id.* In *Sewell,* we affirmed that a jury reasonably could have concluded that Sewell aided and abetted the principal because Sewell both associated himself with, and participated in, the illegal transaction undertaken by the principal: He accompanied the principal to provide protection (and told the police that was what he did), watched the drug transaction, and counted the money paid when the drugs were transferred. We concluded in *Sewell* that the government met its burden even though its evidence was not overwhelming. So, too, in *United States v. Coleman,* 179 F.3d 1056 (7th Cir.1999), we concluded that the defendant had aided and abetted the principal because he "was not simply passively present during the transaction." *Id.* at 1061. Coleman had gone with the principal to retrieve the cocaine, had re-

turned with him to complete the transaction, and discussed the fact that Coleman had taught the principal to cook the cocaine. We concluded that, "[a]lthough the evidence is not overwhelming, it is not so spare that we will disturb the jury's verdict." *Id.*

In this case, however, the evidence is altogether much more sparse than that in *Sewell* or *Coleman.* To succeed, the government was required to produce evidence that Mr. Heath associated himself with, and participated in, an illegal transaction undertaken by Cannon. However, we find no evidence in the record that Mr. Heath knowingly participated in any transaction on October 30, 1996, or intended to aid Cannon in any way. As the prosecutor informed us at oral argument, the crack cocaine Cannon had on his person was not in public view. There was no evidence that Mr. Heath knew what Cannon was carrying or what he was doing. Without evidence of Mr. Heath's knowledge of Cannon's possession, their prior association, or his intent to join Cannon's drug dealing—indeed, without evidence of something other than Mr. Heath's being present with Cannon—we believe that this evidence, placed before a jury, would be insufficient as a matter of law.

■ The government asserts that Mr. Heath was "in the company of" Cannon and therefore was not merely present or merely associating with him. This distinction is simply not made in the law.[5] As Judge Wood noted at oral argument, it is not unlawful for someone to be in the company of another. This case presents the classic example of "mere presence." On this record, Mr. Heath was simply passively present on October 30, 1996. "To be present at a crime is not evidence of guilt as an aider or abettor." *United States v. Williams,* 341 U.S. 58, 65, 71

S.Ct. 595, 95 L.Ed. 747 (1951) (citing *Hicks v. United States,* 150 U.S. 442, 447, 450, 14 S.Ct. 144, 37 L.Ed. 1137 (1893)). In addition, we point out that no transaction occurred in which he might have participated; nothing occurred that he tried to make succeed. For that reason, we also note that there is no similarity between the two crimes. In the crime of conviction, Mr. Heath was charged with possession of illegal drugs; in the earlier crime, possession of a weapon. Because there is no evidence that Mr. Heath knowingly participated in Cannon's possession of the crack and no evidence of drug dealing, we conclude that his mere presence in the company of Cannon is not similar to his possession of small baggies of crack and cocaine powder many months later.

■ We hold that the government faltered on the third prong of the Rule 404(b) test by failing to establish that a jury reasonably could find that Mr. Heath aided or abetted Cannon on October 30, 1996. On that ground, we believe, the evidence of the October 30 incident should not have been admitted. Without that evidence, the only evidence before the jury was evidence that Mr. Heath, a cocaine user, possessed 1.7 grams of cocaine powder and .76 grams of crack cocaine on May 17, 1997, in small baggies. The government's theory of relevance, in this case, was that Mr. Heath possessed those baggies with intent to distribute rather than to use them, and proof that he was earlier in the company of someone with a large supply of crack cocaine would be strong evidence that he was involved in drug distribution himself. Now that we have made clear that Mr. Heath's mere association with Cannon was simply not enough, we further hold that the admission of this evidence—of this huge quantity of crack, as compared with

---

5. In fact, we refer to "mere presence of an individual in the company of one properly suspected of a criminal activity," *United States v. Gaston,* 620 F.2d 635, 639 (7th Cir. 1980) (per curiam), when making probable cause determinations. *See also Taylor v. Wa-*ters, 81 F.3d 429, 434 (4th Cir.1996) ("That one is merely present 'at the scene of a crime or in the company of a person engaging in criminal activity' is not, by itself, sufficient to establish probable cause.").

the small amounts he was found carrying in May 1997—was extremely prejudicial, and its prejudicial effect was far greater than its probative value. *See Old Chief v. United States,* 519 U.S. 172, 180, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). We therefore conclude that the district court abused its discretion by admitting it. Accordingly, the judgment must be reversed.

## B. Relevant Conduct

Mr. Heath also challenges the district court's calculation of his sentence, in particular its inclusion of the 35.1 grams of cocaine found on Cannon as "relevant conduct." Because we have concluded that, on this record there is no evidence that Mr. Heath knowingly participated in Cannon's drug possession of October 30, 1996, it is clear that, if we were to reach this issue, the enhancement could not be sustained.

## Conclusion

For the foregoing reasons, we reverse the judgment and sentence of the district court and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.