UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 15, 2006
Decided December 12, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-3529

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> JOSE PADILLA, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. <br><br> No. 04 CR 130 <br><br> Allen Sharp, <br> *Judge.* |

**ORDER**

Police sent an informant to make a controlled buy of one pound of methamphetamine from Jose Padilla.  The informant returned with the drugs, and Padilla was charged with distributing methamphetamine.  *See* 21 U.S.C. § 841(a)(1).  But during the controlled buy, the informant met with Padilla and another unidentified man, and surveillance officers were unable to see who passed the drugs to the informant.  What's more, the informant died before Padilla's trial.  At trial the government argued that it did not matter whether the informant received the drugs from Padilla or the other man, because given the circumstances Padilla was guilty under a theory of aiding and abetting.  The jury agreed, and the district court

sentenced him to a 78-month term of imprisonment. Padilla appeals, arguing that the government failed to present sufficient evidence to convict him. Because a rational jury could not have found beyond a reasonable doubt that Padilla participated in the drug deal, we reverse his conviction.

At trial the government called five members of the team of local and federal law enforcement officers who conducted surveillance of the informant's controlled buy. The informant, David Garcia, died before trial in a homicide unrelated to this case, so the government's principal witness was Barry Snyder, an Elkart, Indiana, police officer who apparently led the investigation. Snyder testified, over defense counsel's hearsay objection, that Garcia arranged the drug deal with Padilla, but the government presented no recordings or documents regarding the arrangements. Snyder also testified that his team searched Garcia and his car just before he met with Padilla and found no drugs. Garcia was then given $3500 in marked bills to purchase the drugs.

According to Snyder, the controlled buy began in the parking lot of one grocery store and then moved to another. As Snyder videotaped the events from across the street, Garcia drove into the parking lot of the first store, Los Galanes Supermarket, and waited for Padilla. The videotape, which was admitted into evidence and shown to the jury, depicts Garcia waiting in his car as a black Chevrolet Impala arrives at the store. Snyder identified the driver of the Impala as Padilla. Garcia followed the Impala out of the parking lot, and Snyder trailed the two cars to a nearby cross street, where they stopped momentarily. Snyder could not see or hear what transpired between Padilla and Garcia.

Snyder testified that Padilla and Garcia then split up. Snyder followed Garcia to the parking lot of the second grocery store, Cueramaro Supermarket, where Snyder continued to capture the events on videotape, this time from within the same parking lot. This video, also admitted as an exhibit and shown to the jury, depicts Padilla driving his black Impala into the Cueramaro parking lot and stopping next to Garcia's car, which was parked away from the store's front door. Padilla briefly entered and exited Garcia's car, but Snyder's view was obstructed and he could not see if Padilla carried anything with him. From his vantage point, however, Snyder overheard Padilla, who was now standing outside Garcia's car, addressing Garcia through the open driver's window. Snyder could not understand much of the conversation because it was in Spanish, a language he is not fluent in, but he testified that he did hear Padilla mention "money" in English. None of this conversation is audible in the video, although conversations between the surveillance team members are.

As Snyder continued to record the events on video, Garcia then drove to the front door of the store where the unidentified man stood waiting. The man entered and exited Garcia's car alone, just as Padilla had done minutes before. Again, Snyder could

not see if the man carried anything with him. Meanwhile, Padilla backed his Impala into a parking spot. At this point, Garcia left. After observing the unidentified man and Padilla leave the store together in Padilla's car, Snyder returned to the staging area and participated in a second search of Garcia and his car, which turned up a pound of methamphetamine. On cross-examination, Snyder admitted that none of the marked money that Garcia used in the transaction was recovered and that he never saw the drugs or money exchange hands.

David Ritchie, a special agent for the Drug Enforcement Administration, testified next about his observation of the events from an airplane. Ritchie, using high-powered binoculars, focused on following Padilla's black Impala and testified that he maintained visual contact with Padilla from his first sighting at Los Galanes to the conclusion of the drug deal at Cueramaro Supermarket. Despite this close surveillance, Ritchie, like Snyder, never saw Padilla handle the drugs or the money from the controlled buy. However, Ritchie did testify that after Garcia and Padilla met near Los Galanes, Ritchie saw Padilla drive to a nearby home, get out of his car, and talk to the same unidentified man that Snyder would see Padilla with a few minutes later at Cueramaro. After the two men walked together to the rear of the house, Ritchie observed them return to the driveway where the unidentified man opened and closed the trunk of a car parked there, but Ritchie could not see what, if anything, was taken from the trunk. Padilla and the other man got into the black Impala, and Padilla drove a couple of blocks before the other man exited the car. The unidentified man walked to Cueramaro and waited by the store's door while Padilla drove there separately. Ritchie testified to observing the same events at the supermarket that Synder captured on tape. The government never explained who the third man at the drug transaction was, or why he remained unidentified.

The government called three other members of the surveillance team, but none of them could say either how Garcia gained possession of the methamphetamine or what he did with the buy money. One officer testified that he maintained constant visual contact with Garcia from the beginning of the buy until he returned to the staging area with the drugs. That officer searched Garcia and his car before and after the transaction and found no drugs other than the pound of methamphetamine that turned up after the controlled purchase. Padilla was not indicted and arrested until two months after the controlled buy.

After the government rested, Padilla moved for a judgment of acquittal. Defense counsel argued that without Garcia's testimony the government had failed to link Padilla to the methamphetamine. In response the government acknowledged that it lacked eyewitness evidence of Padilla personally handing the drugs to Garcia or receiving the money, but the government argued that it nonetheless had established its case against Padilla on an aiding-and-abetting theory. The district court remarked

that it was "deeply troubled by this record," but still found "just barely enough of a circumstantial case here to let it go to the jury." The jury found Padilla guilty.

Padilla now argues that there was insufficient evidence to establish that he possessed the drugs or that he aided and abetted the drug transaction.[1] We will reverse a criminal conviction for insufficient evidence if, even viewing the evidence in the light most favorable to the government, we conclude that no rational jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Allen*, 390 F.3d 944, 947 (7th Cir. 2004). In this case, where the government relied on an aiding-and-abetting theory, Padilla's conviction cannot stand unless the evidence establishes that he (1) knew that methamphetamine was being distributed, (2) desired that the transaction succeed, and (3) committed some affirmative act of assistance. *See* 18 U.S.C. § 2(a); *Allen*, 390 F.3d at 947-48 & 948 n.1; *United States v. Folks*, 236 F.3d 384, 389 (7th Cir. 2001). And while the government can secure a conviction on the basis of circumstantial evidence, *see United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2005); *United States v. Irorere*, 228 F.3d 816, 823 (7th Cir. 2000), it cannot make its case by piling inference upon inference, *see Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001) ("Although a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation."); *United States v. Covelli*, 738 F.2d 847, 860 (7th Cir. 1984).

In particular, we have noted that mere presence and guilt by association fail to prove criminal liability under an aiding-and-abetting theory. *See United States v. Heath*, 188 F.3d 916, 921 (7th Cir. 1999). In *Heath* we concluded that the district court had erred in admitting under Federal Rule of Evidence 404(b) evidence of what the government characterized as a prior drug offense that the defendant aided and abetted. *Id.* at 922. Several months before the offense for which he was on trial, the defendant and another man were arrested by police while standing in front of a house with several other persons. *Id.* at 919. The other man was carrying a 35-gram rock of crack cocaine and two baggies holding smaller rocks. *Id.* For his part, the defendant carried a semi-automatic handgun and over $200 in cash, and wore a bulletproof vest. *Id.* Although the government argued that this evidence was enough to establish that the defendant had aided and abetted the other man's possession of a distributable quantity of crack, we concluded that the facts proved nothing more than mere presence, which "is not evidence of guilt as an aider or abettor." *Id.* at 922. The same can be said about this case.

---

[1] The clerk of the district court and Padilla's newly appointed counsel have mischaracterized Padilla's conviction in the judgment and briefs as "possession with intent to distribute." The conviction is for *distribution.*

As Padilla observes, the government's evidence proves that he was present during the distribution of the methamphetamine, but that is all. Although in his brief Padilla does not challenge the admission of Snyder's testimony that he was the one Garcia arranged the deal with, that testimony was met with a proper objection and should have been excluded as inadmissible hearsay. *See United States v. Williams*, 133 F.3d 1048, 1051 (7th Cir. 1998) (holding that FBI agent's trial testimony about informant's out-of-court statement was inadmissible hearsay). As such, it carries little weight. The government offered no recordings or other evidence to substantiate this representation and Garcia, of course, was unavailable to testify (or face cross-examination) regarding the transaction.

The remaining evidence shows only that Padilla drove to two grocery stores, at times with an unidentified man, and mentioned money during a brief conversation with Garcia. And this unidentified man remains a mystery; the government has never explained why he remained unidentified even though Ritchie observed him emerging from a particular house, or clarified if he was charged in connection with this controlled buy. Ultimately, no evidence firmly connects Padilla to the drugs or the money from the sale, and therefore the government presented insufficient evidence to support Padilla's conviction. *Cf. United States v. Coleman*, 179 F.3d 1056, 1059, 1061 (7th Cir. 1999) (upholding conviction for possession with intent to distribute under aiding-and-abetting theory where evidence, though "not overwhelming," established that defendant was present during controlled buy, praised quality of crack, and claimed to have taught person who prepared it how to do so); *United States v. Sewell*, 159 F.3d 275, 278 (7th Cir. 1998) (upholding conviction for drug distribution under aiding-and-abetting theory where testimony established that defendant counted money from multiple drug sales). At best this record convincingly establishes that Padilla was present during a crime, but his presence alone does not support a finding that he aided and abetted the drug transaction. *See Heath*, 188 F.3d at 922.

The government may well be correct that Padilla and the unidentified man were joint participants in the drug crime. But to conclude that Padilla was more than merely present, the jury had to pile inference upon inference. *See Piaskowski*, 256 F.3d at 693. The jury had to assume that Padilla knew that the unidentified man possessed the drugs, and that Padilla drove to the grocery store to further the drug transaction, not for unrelated, personal reasons. Only then could Padilla's otherwise innocuous actions of driving around be understood as affirmatively assisting a drug transaction. *Cf. Sewell*, 159 F.3d 275, 278 (7th Cir. 1998) (upholding conviction for drug distribution under aiding-abetting-theory when defendant not only drove around with dealer, but also admitted he provided protection for dealer, and counted money from the sales). What's more, the fact that Padilla mentioned money to Garcia could only be proof that Padilla knew about or assisted in the negotiations of the drug deal if the jury assumed that the topic came up during a conversation about the drug deal. But no evidence supports this assumption. Snyder could not provide the context of the conversation

because it took place, almost exclusively, in Spanish, a language he could not understand. Surely Padilla's actions were suspicious, but unsupported inferences and speculation cannot support a finding of guilt beyond a reasonable doubt. *See Piaskowski*, 256 F.3d at 692 ("A strong suspicion that someone is involved in criminal activity is no substitute for proof of guilt beyond a reasonable doubt.").

Had Garcia not died, had the surveillance team glimpsed the drugs changing hands, or had Snyder understood the conversations between Garcia and Padilla, this appeal might have come out differently. But as the record stands, there is insufficient evidence to support Padilla's conviction. Accordingly, the judgment of conviction is REVERSED.