In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3425

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVYN TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08 CR 30061—**J. Phil Gilbert**, *Judge.*

ARGUED NOVEMBER 4, 2010—DECIDED MARCH 29, 2011

Before BAUER, MANION, and HAMILTON, *Circuit Judges.*

MANION, *Circuit Judge.* Kevyn Taylor was convicted by a jury on six counts related to his participation in a crack dealing operation. These included charges that he possessed, distributed, and conspired to distribute crack cocaine, as well as related firearms charges. He appeals his conviction for distribution of crack cocaine, arguing that there was insufficient evidence for a jury to find beyond a reasonable doubt that he aided and abetted a

crack deal in October 2005. He also appeals the portion of his sentence related to the drug convictions, arguing that the district court over-calculated the relevant amount of drugs and erred in enhancing his sentence for obstruction of justice based on his trial testimony. We affirm the judgment and the sentence.

I.

In 2005, the Bureau of Alcohol, Tobacco, Firearms, and Explosives began an investigation into drug trafficking activity by Byron Blake and his associates in East St. Louis, Illinois. The investigation was code-named "Operation No Escape" in reference to Club Escape, a nightclub owned by Blake and the home base for the enterprise. Beginning in September of that year, confidential informants made drug purchases first from Ryan Ivory and eventually from Blake himself. Later, in the Spring of 2006, the ATF tapped the phones of Blake and Taylor and conducted surveillance of Blake and his associates. The investigation culminated in the execution of several search warrants, including one at 114 Blazier Drive in Belleville, where Blake and Taylor were known to have spent significant time.

In March 2009, Taylor was indicted on six counts arising from Operation No Escape. Relevant on appeal are Count 1—conspiracy to distribute over 50 grams of crack cocaine—and Count 2—distributing more than 50 grams of crack on October 20, 2005, both in violation of

21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii).[1] At trial, the government sought to prove Count 2 by showing that Taylor aided and abetted the recorded controlled buy that the government's confidential informant, Michael Woods, made from Blake on October 20. Woods testified that he bought drugs from Blake on three occasions in October 2005. First, during the week of October 10, Woods accompanied Ivory to purchase crack from Blake, but stayed in the car while Ivory met Blake. Second, on October 15, Blake arrived at Ivory's house in a truck driven by Taylor. While Woods waited, Ivory approached the vehicle. Blake handed four-and-a-half ounces of crack to Taylor, who handed the drugs to Ivory. Finally, on October 20, Woods purchased crack directly from Blake while wired with audio- and video-recording equipment. Again at Ivory's house, Woods stood waiting outside his car until Blake and Taylor arrived in a black Ford Explorer that Taylor had rented several days before. This time, Blake exited the truck and got into the passenger side of Woods's car, where the deal took place.

Ryan Ivory also testified at trial. He described the events of October 20 similarly to Woods and testified that Taylor drove the car he had observed "during that time

---

[1] Count 3 charged possession with intent to distribute on June 24, 2006 in violation of 21 U.S.C. §§ 841(a)(1) and 842(b)(1)(C); Count 4 charged possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); Count 5 charged that Taylor was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Taylor does not appeal his conviction on these three charges.

period," but did not specifically identify Taylor as being present on that day, nor mention the transaction five days before. He also testified that Taylor would often accompany Blake on deals and sometimes collect money for him, but the only specific time periods he mentioned were after the October 20 controlled buy.

To prove the conspiracy to distribute charges of Count 1, the government pointed to the evidence of Taylor's participation in the October 20 deal, and also introduced selected audio recordings of phone calls between Blake and Taylor that, according to the testimony of the case agent, concerned the preparation and distribution of crack cocaine. In one call, Taylor reported back to Blake that one of his purchasers claimed that there was a problem with his "shake" and was unhappy because "he lost about 18 out of his two and a quaker"; according to the case agent this meant that the purchaser claimed to have lost 18 grams out of 2 1/4 ounces (63 grams) of powder cocaine when he tried to "cook" the powder to convert it to crack, potentially the result of the "shake"—the very powdery cocaine at the bottom of a bag—being cut with baking powder. Ivory also identified some of the recorded discussions as involving crack production.

Taylor testified in his own defense. He denied ever having met Woods and denied that he had ever sold or used cocaine or crack. He did, however, admit to dealing marijuana, and attempted to explain away the incriminating phone conversations with Blake as relating solely to the production and sale of marijuana.

He claimed that Blake would receive the marijuana in bricks about the size of a hockey puck and use a special machine to moisten the marijuana. The government called the case agent back to the stand, and he rebutted Taylor's testimony, stating that he had never heard of applying baking soda to marijuana and that other aspects of the recorded calls were inconsistent with marijuana dealing.

The jury convicted Taylor on all counts. For Count 1, the jury was asked to make special findings concerning the quantity of the drugs involved. The verdict sheet asked whether the offense involved more than 50 grams or, if less than 50 grams, more than 5 grams. Inexplicably, the jury answered "yes" to both questions.[2]

The presentence investigation report calculated that Taylor was responsible for 396.7 grams of powder cocaine, 837 grams of crack cocaine, and 227 kilograms of marijuana—a total marijuana equivalency of 17,046 kilograms under the sentencing guidelines. In response to an objection by the government, the PSR was amended to include a two-level enhancement for obstruction of justice, for a total offense level of 36. With a criminal history category of I, this resulted in a guidelines range of 188 to 235 months for Counts 1 and 2.

Regarding his relevant conduct, Taylor made a few objections to the probation officer's characterization of the evidence and, much more significantly, argued that

---

[2] Strangely, no one appears to have sought to clarify what the jury intended in its special verdict form.

the court should take into account the disparity in the guidelines' treatment of powder and crack cocaine, as permitted by *Kimbrough*, and reduce the total marijuana equivalency considerably, to 473.74 kilograms. He also objected to the obstruction of justice enhancement for perjury, arguing that such enhancements "put[] a damper on anyone who wants to testify and who might testify different from what the government says." Taken together, his objections would have reduced the base offense level to 26, with a guideline range of 63 to 78 months' imprisonment. The court adopted the PSR's recommendations in all respects. Regarding the disparity between crack and powder cocaine, the court declined to disregard the guidelines, stating that it would follow the current guidelines ratios until amended. It also found that Taylor committed perjury in his testimony by going beyond a general denial of his involvement and denying specific details of his involvement with Blake, Ivory, and others. The court then gave concurrent below-guidelines sentences of 180 months on Counts 1, 2, 3, and 5, plus the mandatory minimum of a consecutive 60 months for his possession of a firearm in furtherance of a drug trafficking crime. Taylor appeals his conviction on Count 2 and his sentence on Counts 1 and 2.

II.

On appeal, Taylor argues that there was insufficient evidence for the jury to find that he aided and abetted the October 20 crack deal. Regarding his sentence, he makes

two arguments. First, he argues that at sentencing the district court incorrectly considered as relevant conduct an amount of drugs that exceeded the jury's special verdict. Second, he argues that the district court did not make sufficient findings to support its application of a two-level enhancement for obstruction of justice. We review each issue in turn.

**A.  Sufficiency of the Evidence**

Taylor argues that there was insufficient evidence from which the jury could find beyond a reasonable doubt that he aided and abetted Blake in the October 20, 2005, drug deal. In this, Taylor faces a nearly insurmountable hurdle: to prevail, he must show that "after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Unites States v. Spells*, 537 F.3d 743, 746-47 (7th Cir. 2008). Further, in reviewing the sufficiency of the evidence in a criminal conviction, we do not reweigh the evidence or second-guess the jury's credibility determinations. *Id.*

To establish that Taylor aided and abetted Blake, the government needed to prove that Taylor associated himself with the criminal activity and that he voluntarily participated in it. *United States v. Heath*, 188 F.3d 916, 921 (7th Cir. 1999); *United States v. Sewell*, 159 F.3d 275, 278 (7th Cir. 1998). Association means that Taylor shared in Blake's criminal intent; participation means that Taylor "affirmatively acted to make the venture succeed."

*Heath*, 188 F.3d at 921. Taylor's participation in the October 20 drug sale is demonstrated in the record: not only did he drive Blake to and from Ivory's house, but he also rented the vehicle used. Both of these are affirmative, voluntary acts that contributed to the success of the drug deal. What Taylor contests is whether the government proved that he associated himself with the deal: he argues that there was no evidence of anything other than his presence at the scene of the drug deal, and that mere presence is insufficient evidence to support a conviction for aiding and abetting. While he does not appeal his conviction for conspiracy to distribute crack, he argues that all of the evidence of his involvement in the conspiracy related to a period of time months after the October 20 transaction and thus does not support a reasonable inference that he had the necessary intent to aid Blake at the time of the deal.

Taylor's premise is correct—there is nothing illegal about renting a car or using that car to give someone a ride. And the mere fact that Taylor's actions aided the venture is not enough to support a conviction without evidence that Taylor knew of the purpose of the venture and intended to abet the drug deal. But Taylor understates the evidence against him. The government introduced enough evidence for the jury to find that Taylor was not merely present. Most significantly, Woods testified that just five days before the recorded controlled buy, Taylor had driven Blake on another controlled buy. At that first buy, moreover, Woods stated that Taylor had actually handled the crack, passing it from Blake to Ivory. This evidence alone refutes Taylor's

mere presence theory: Taylor's direct participation with Blake in a crack deal five days prior, in a virtually identical situation, permits the jury to infer that he was not innocently driving Blake to and from Ivory's house, but instead that Taylor rented and drove the Ford Explorer intending to assist Blake in distributing crack. Accordingly, Taylor's conviction for distributing crack on October 20 stands.

## B. Sentencing Challenges

Taylor also challenges two aspects of his sentence. First, Taylor argues that, in light of the jury's contradictory findings concerning the quantity of drugs, the district court erred in finding that he was responsible for more than 50 grams of crack. Although his argument is difficult to follow, Taylor appears to contend that by considering a quantity of drugs higher than that found by the jury, the district court violated at least the principles underlying *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The government contends that Taylor waived this argument by not raising it at any point in the proceedings below.

Construing waiver principles liberally in Taylor's favor, it is possible that the failure to raise the argument below was an oversight and not an obvious tactical decision, and thus merely a forfeiture that we review for plain error. *See United States v. Jaimes-Jaimes*, 406 F.3d 845, 848-49 (7th Cir. 2005). But the district court did not err at all, as a cursory glance at the statutory sentencing scheme at the time shows. If the jury concluded that

Taylor was responsible for 50 or more grams of crack, the statutory range would have been 10 years' to life imprisonment. 21 U.S.C. § 841(b)(1)(A)(iii). On the other hand, if it concluded that Taylor was responsible for more than 5 grams but less than 50, the range would have been from 5 to 40 years' imprisonment. *Id.* § 841(b)(1)(B)(iii). In fact, even if the jury had found that Taylor was responsible for *less* than 5 grams, the statutory maximum would have been 240 months. *Id.* § 841(b)(1)(C). *Apprendi* prohibits a sentence beyond the maximum allowed by the facts found by the jury. But Taylor's reliance is misplaced: his sentence on the drug counts was 180 months, and thus permitted by the jury verdict of guilty regardless of the quantity of drugs involved. Indeed, we have specifically held that the special verdict of a jury concerning the amount of drugs is irrelevant in such situations, because *Apprendi* does not affect a sentence below the applicable statutory maximum specified in 21 U.S.C. § 841(b)(1)(C). *United States v. Hernandez*, 330 F.3d 964, 980 (7th Cir. 2003).

Second, Taylor argues that the district court erred in applying a two-level enhancement for an obstruction of justice. When reviewing an obstruction of justice enhancement, we review the underlying factual findings, like all such findings, for clear error, "and we review de novo whether those findings adequately support the enhancement." *United States v. Vallar*, 2011 WL 488877, at *11 (7th Cir., Feb. 14, 2011) (quoting *United States v. Anderson*, 580 F.3d 639, 648 (7th Cir. 2009)). Such an enhancement is appropriate where a defendant "willfully obstructed or impeded or attempted to obstruct or

impede, the administration of justice," U.S.S.G. § 3C1.1, and perjury is a settled example of conduct that may warrant an enhancement. *Vallar*, at *11. A defendant commits perjury "if, while under oath, he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). When a defendant objects to a sentencing enhancement arising from his testimony, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." *Id.* at 95.

In this case, the district court found that Taylor's testimony went beyond a "general denial of his involvement in the drug activity" and that he committed perjury by making "specific denials regarding his involvement . . . with Byron Blake and testimony of Ryan Ivory and others." Taylor argues that this finding is insufficient under *Dunnigan* to establish that he committed perjury. It is true that the district court did not address each element of the perjury definition in isolation, but *Dunnigan* does not require this: the district court's determination is sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." 507 U.S. at 95. Here, the district court's straightforward finding of perjury satisfies the definition of perjury. There is no doubt that the court found that Taylor's testimony was false. And the materiality and willfulness of the false

statements are established with the court's finding that Taylor's testimony went well beyond a simple denial of guilt, contradicting specific details of the testimony of Ivory and Woods and providing an elaborately detailed explanation of why the recorded phone calls involved marijuana, rather than crack. The district court's factual findings encompass all the elements of perjury and therefore adequately support an enhancement for obstruction of justice.

### III.

There was sufficient evidence from which a jury could conclude beyond a reasonable doubt that Taylor knew that he was aiding Blake in distributing crack on October 20, 2005. Therefore, we AFFIRM the judgment of the district court. The jury's contradictory findings on the special verdict form regarding the amount of drugs involved are irrelevant because the ultimate sentence was below the mandatory minimum for a conviction for distributing any amount of crack. Further, the district court made sufficient factual findings to support a two-level enhancement for obstruction of justice. Therefore, we AFFIRM the sentence of the district court.