**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph J. SCHULTE, Defendant–**
**Appellant.**

**No. 97–4008.**

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1998.

Decided May 28, 1998.

Daniel P. Bach (argued), Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Stephen P. Hurley, Marcus J. Berghahn (argued), Hurley, Burish & Milliken, Madison, WI, for Defendant–Appellant.

Before BAUER, FLAUM, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Joseph Schulte pleaded guilty to one count of violating 18 U.S.C. § 2252(a)(4)(B), which prohibits the possession of child pornography that has traveled in interstate commerce. Although Wisconsin law also criminalizes this conduct, Schulte was prosecuted in federal court and, consequently, sentenced in accordance with the Sentencing Guidelines. Schulte moved for a downward departure because state law punished the same criminal conduct less severely than the sanctions mandated by the Sentencing Guidelines. The district court denied his motion to depart, and Schulte received a sentence of fifteen months imprisonment and three years of supervised release. We affirm the district court's refusal to consider Schulte's proposed ground for departure.

I.

Joseph Schulte communicated with an undercover FBI agent through an Internet "chat room" provided by America On Line. The agent, using the moniker "Syberslave," investigated the transmission of child pornography as part of a federal task force. In one particular on-line group discussion, Schulte demonstrated a willingness to trade child pornography and to aid others in their efforts to scan such images onto their computer systems. In fact, Schulte transmitted thirteen images of children engaged in sexual conduct to the undercover federal agent. The Government thereafter conducted a

search of Schulte's residence in Madison, Wisconsin. The fruits of this search included the thirteen images transmitted to the Government's agent, as well as computer disks that contained images of young children engaged in sexually-explicit behavior.

Schulte pleaded guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). At his sentencing hearing, the district court rejected his motion to depart downward from the 15 to 21 month range prescribed by the Sentencing Guidelines. Schulte pointed to a few cases in which defendants prosecuted for similar conduct in state court received only a three-month term of imprisonment. The district court held that it lacked authority to depart on the basis of this disparity between state and federal sentences:

> I believe that it's not appropriate within the sentencing guidelines and the whole context of the guidelines to lower a sentence simply to conform to what is being done as a general matter in state court.... We cannot depart downward just because we think somebody in front of us is for all kinds of reasons not deserving of the type of sentence that Congress and the Sentencing Commission has said was appropriate. It is not appropriate to go downward because the state courts are generally sentencing at the lower level.

The court then sentenced Schulte to fifteen months imprisonment, the lowest possible sentence within the range mandated by the Sentencing Guidelines.

## II.

■ This appeal requires us to decide whether a district court may depart from the punishment prescribed by the Sentencing Guidelines based on a disparity between that punishment and the sanction imposed for similar conduct in the relevant state court. Our starting point is the Supreme Court's decision in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), in which the Court attempted to create an orderly system for evaluating proposed departures under the Sentencing Guidelines. According to *Koon*, the Sentencing Commission established four categories of sentencing factors: forbidden, encouraged, discouraged, and unmentioned. *Id.* at 94–96, 116 S.Ct. at

2045. Forbidden factors—such as race, sex, national origin, creed, religion, socio-economic status, drug or alcohol dependence, or lack of guidance as a youth—can never be the basis for a departure. *See* U.S.S.G. §§ 5H1.4, 5H1.10, & 5H1.12. Encouraged factors, by contrast, are explicitly contemplated as grounds for departures. Examples of encouraged factors include the defendant's role in the offense, criminal history, and dependence on criminal activity for a livelihood. *See* U.S.S.G. §§ 5H1.7–5H1.9. Discouraged factors fall somewhere between these two poles: "[A]lthough these factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, they may be relevant to this determination in exceptional cases." U.S.S.G. Ch. 5, Part H, intro. comment. Some of the Commission's discouraged bases for departure include a defendant's age, education, family and community ties, employment record, and mental or emotional conditions. *See* U.S.S.G. §§ 5H1.1–5H1.3, 5H1.55H1.6, & 5H1.11.

■ Unmentioned factors, by definition, do not receive any sort of explicit endorsement or prohibition in the Guidelines. In *Koon*, the Court stated that departures based on unmentioned factors are permissible only if a sentencing court determines that "the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." 518 U.S. at 107–09, 116 S.Ct. at 2051. The "heartland" is the "set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt. A(4)(b), intro. comment. To make this determination of typicality, courts must take into account "the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole." *Koon*, 518 U.S. at 94–96, 116 S.Ct. at 2045 (quotation omitted). Thus, a departure based on an unmentioned factor is appropriate only in the limited situations in which the proposed factor places a case outside the heartland of cases contemplated by both the specific, relevant guideline(s) and the Guidelines as a whole. *See United States v. Carter*, 122 F.3d 469, 473 (7th Cir.1997). The Sentencing Commission views this departure power as quite limited and expects

"that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent'." *Koon*, 518 U.S. at 94–96, 116 S.Ct. at 2045 (quoting USSG Ch. 1, Pt. A(4)(b), intro. comment). We accept a district court's factual finding that certain factors are present unless it is clearly erroneous, but we review *de novo* the court's evaluation of whether those facts take the case outside the heartland. *See United States v. Gonzalez–Portillo*, 121 F.3d 1122, 1124 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 720, 139 L.Ed.2d 660 (1998).

Despite the best efforts of the Commission and the Supreme Court to formulate abstract definitions of the heartland standard, it remains an elusive concept in application. *Koon* instructs lower courts to draw the boundaries of the heartland with reference to both the specific guideline(s) at issue in a case and the structure and policies of the Guidelines as a whole. *See* 518 U.S. at 94–96, 116 S.Ct. at 2045. Our Circuit has followed this guide in crafting a standard by which to evaluate whether the "Guidelines taken as a whole," *id.*, support a departure based on a proposed unmentioned factor. In *United States v. Meza*, 127 F.3d 545 (7th Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 1103, 140 L.Ed.2d 157 (1998), the defendant's co-conspirators cooperated with the Government and consequently received reduced sentences pursuant to USSG § 5K1.1, which rewards defendants for their "substantial assistance" to law enforcement authorities. We rejected Meza's contention that, in light of the Supreme Court's decision in *Koon*, the district court should have considered a downward departure based on the disparity between his sentence and those of his co-conspirators. We noted that the Sentencing Guidelines did not mention a disparity among co-conspirators' sentences as a potential ground for departure, *see id.* at 549, but we held that such a disparity did not remove Meza's case from the heartland because the disparity was created by the structure and proper application of the Guidelines, *see id.* at 550. The disparity in sentences between Meza and his co-conspirators, we reasoned, was a "justified disparity" because it resulted from the proper application of § 5K1.1; section 5K1.1 is inherently a "disparity-producing guideline", *id.* at 547.

We held that any disparity caused by the proper application of § 5K1.1 did not remove Meza's case from the heartland of typical cases because the Guidelines as a whole—indeed, the very existence of § 5K1.1—expressly contemplated that co-conspirators who cooperated with the Government could receive a lower sentence than those who refused to cooperate. *See id.* at 550.

Like the defendant in *Meza*, Schulte seeks a downward departure based on a sentencing disparity. He correctly posits that the disparity between state and federal punishments for identical conduct is not mentioned by the Guidelines as a potential ground for departure. Our analysis, therefore, shifts to the heartland determination. Schulte claims that his case falls outside the heartland because of the disparity between his fifteen-month prison sentence in federal court and the much shorter prison terms allegedly received by similarly-situated defendants in state court. Schulte essentially contends that the Sentencing Guidelines create an unjustified disparity because they impose a more onerous sentence on a defendant for conduct that would have called for a less severe punishment in state court. He argues that perpetuating such disparities disrupts the "evenhandedness and neutrality that are the distinguishing marks of any principled system of justice." *Koon*, 518 U.S. at 111–13, 116 S.Ct. at 2053.

Schulte's argument, however, proceeds from a fundamentally flawed premise. The federal government can only mandate uniform sentences for those offenses within its jurisdiction. The Sentencing Commission properly stated its limited authority and purpose: "[T]o establish sentencing policies and practices for the *federal criminal justice system* that will assure the ends of justice by promulgating detailed guidelines prescribing the appropriate sentences for offenders convicted of *federal crimes*." U.S.S.G. Ch. 1, Pt. A(1), intro. comment. (emphases added). The Guidelines have no effect on a state legislature's freedom to impose criminal punishments that differ from the federal government's sanctions for the same conduct. The Guidelines seek uniformity, not with respect to federal and state sentences, but rather

among federal sentences for similar conduct. Schulte does not complain of a disparity between his sentence and those received by other *federal* offenders, the only group similarly situated to him. A disparity is not "unjustified" simply because the federal and relevant state governments impose different punishments on similar conduct. One cannot say—as is required to remove a case from the heartland-that such a disparity occurred as a result of an improper application of the Guidelines. *See Meza,* 127 F.3d at 550.

We conclude that a disparity between federal and state sentences does not take a case out of the heartland of cases contemplated by the Sentencing Commission. Indeed, recognizing this ground for departure would undermine the operation of the Guidelines. If courts were to depart from the sentences mandated by the Guidelines in deference to numerous and varying standards in the state systems, they would eviscerate the uniformity in federal sentencing that is the *raison d'etre* of the Sentencing Reform Act of 1984. *See, e.g., United States v. Haynes,* 985 F.2d 65, 70 (2d Cir.1993) ("Allowing departure because a defendant might have been subjected to different penalties in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress' stated goal of uniformity in sentencing."). Any disparity between federal and state sentences, therefore, is "justified" by the structure of the Guidelines and cannot remove a case from the heartland. *See also United States v. Keeter,* 130 F.3d 297, 301 (7th Cir.1997) (applying *Meza* and holding that a disparity between co-defendants' sentences fell within the heartland as a "justified" disparity because departure on this basis would "undermine the objectives of the Guidelines"), *cert. denied sub nom. Ahrens v. United States,* — U.S. ——, 118 S.Ct. 1331, 140 L.Ed.2d 492 (1998).

### III.

■ For these reasons, we do not deem Schulte's case removed from the "heartland" because there exists a disparity between the state and federal punishments for his criminal conduct. Since the challenged disparity is within the heartland, then, the district court did not err in refusing to consider a departure on this ground. We affirm Schulte's sentence.