UNITED STATES of America, Plaintiff–Appellee,

v.

Maurice SEWELL, Defendant–Appellant.

No. 98–1028.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1998.

Decided Oct. 16, 1998.

Kit R. Morrissey (argued), W. Charles Grace, Office of United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Thomas F. Flynn (argued), Office of Federal Public Defender, St. Louis, MO, for Defendant–Appellant.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Maurice Sewell was convicted on two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) in the United States District Court for Southern Illinois. Sewell was sentenced to 10 years and one month imprisonment by Judge Stiehl. Mr.

Sewell's original counsel filed a timely notice of appeal in April 1994; however he failed to perfect the appeal, and this Court dismissed the appeal. Subsequently, we granted him relief under 28 U.S.C. § 2255 and remanded the matter to the district court in September, 1997. The district court notified Sewell of his rights on appeal, and this appeal followed. We now affirm Mr. Sewell's conviction and sentence.

## FACTS

In August, 1993, Agent Robert Carpenter of the Metropolitan Enforcement Group of Southwestern Illinois was told by an informant that Troy Rose was selling cocaine, and that Mr. Rose was apparently supplied by a "guy named Maurice," both of whom lived in East St. Louis. Agent Carpenter sent an undercover agent, Andre Williams, to meet with the informant. The informant set up a meeting between Agent Williams and Mr. Rose, so Agent Williams could purchase crack cocaine from Mr. Rose.

On August 13, 1993, Agent Williams met Mr. Rose outside of his apartment. Mr. Rose was sitting in a pickup truck he co-owned with appellant Maurice Sewell, who sat in the passenger seat. Mr. Rose exited the truck, talked briefly with Agent Williams and gave him 24.3 grams of cocaine. Agent Williams paid Mr. Rose $1,100; Mr. Rose gave some of the cash to Sewell in the pickup truck. Sewell counted it and kept the money. Mr. Rose and Sewell then drove away together.

On August 19, 1993, Agent Williams went to Mr. Rose's apartment to purchase more cocaine. Mr. Rose did not have the amount Agent Williams wanted, but promised to check with his "boy," Sewer Rat, whom Mr. Rose identified as Maurice Sewell. Mr. Rose told Agent Williams that Mr. Sewell did not have sufficient crack either. He also told Agent Williams that he and Mr. Sewell could get more crack once they sold their remaining stashes.

Agent Williams and Mr. Rose met again on August 23 to engage in another cocaine transaction. This transaction took place in a van owned by Mr. Sewell's mother. Mr. Sewell sat in the van's back seat while the drugs were transferred. When the agent paid Mr. Rose, Mr. Rose again handed the money to Sewell who counted the cash, and then kept it.

Mr. Sewell and Mr. Rose were arrested five days later, after Agent Williams arranged one final drug transaction with Mr. Rose. After the arrests, both Mr. Sewell and Mr. Rose noted that Mr. Sewell in no way profited from the drug transactions, other than $10 Mr. Rose gave Mr. Sewell to go to the movies after the first transaction. Mr. Rose told police that he took Mr. Sewell with him on the sales because Mr. Rose was scared. At the time of the sales, Mr. Sewell weighed 260 lbs., and stood 6'0" tall.

## ANALYSIS

Mr. Sewell raises four arguments. First, he contends that the district court erred in overruling his motion for judgment of acquittal because there was insufficient evidence as a matter of law to sustain his conviction. Second, he argues that the judge erred in admitting into evidence a hearsay statement by Mr. Rose under the co-conspiracy exception, because there was insufficient evidence to show the existence of a conspiracy. Third, he argues that the district court mistakenly sentenced him under crack cocaine guidelines rather than under cocaine guidelines. Finally, Mr. Sewell contends that the district court erred in stating that it had no discretion to depart downward from the Sentencing Guidelines. None of these arguments succeed, and thus we affirm.

■ In persuading us to accept his first argument, that there is insufficient evidence to support his conviction, Mr. Sewell faces a difficult task. *United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir.1992). We must affirm a conviction as long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Atterson*, 926 F.2d 649, 654 (7th Cir.1991), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991). Only if no rational juror could have found the defendant guilty on the evidence presented will we reverse. *United States v. Vest*, 116 F.3d 1179, 1191 (7th Cir.1997). We

view the evidence in a light most favorable to the Government. *Id.* Essentially, the record must be "devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Pulido*, 69 F.3d 192, 205–06 (7th Cir.1995). Although the Government's evidence is not overwhelming, it meets this standard.

■ Mr. Sewell was tried as an aider and abettor in a joint venture with Troy Rose under 18 U.S.C. § 2.[1] To establish aiding and abetting liability, the government must prove, in the words of Judge Learned Hand, that a defendant "in some sort associated himself with the venture, that he participated in it as in something he wished to bring about, and that he sought by his actions to make it succeed." *United States v. Valencia*, 907 F.2d 671, 677 (7th Cir.1990) (internal quotations and brackets omitted) *quoting United States v. Peoni*, 100 F.2d 401, 402 (2nd Cir.1938).

■ As this Court stated in *United States v. Beck*, 615 F.2d 441, 448 (7th Cir. 1980), the aiding and abetting standard has two prongs—association and participation. To prove association, the state must show that the defendant shared the principal's criminal intent. To show participation, "there must be evidence to establish that the defendant engaged in some affirmative conduct [or] . . . overt act . . . designed to aid in the success of the venture." *Valencia*, 907 F.2d at 677. (citations omitted.) To prove this affirmative conduct or overt act, "a high level of activity need not be shown" (*id.*), although "mere presence" and "guilt by association" are insufficient. *See United States v. Pena*, 983 F.2d 71, 72–73 (6th Cir.1993) (citations omitted.)

■ Viewing the evidence presented here, a jury could have determined beyond a reasonable doubt that the appellant and Mr. Rose worked together to distribute cocaine. At a minimum, the jury could have reasonably concluded that Maurice Sewell aided and abetted Troy Rose by accompanying him, to provide protection, on two different occasions when Mr. Rose sold crack to Agent Andre Williams. The evidence showed the appellant, a man with a large and imposing physical presence, watched the drug transactions, and counted the money for Mr. Rose, although he did not keep it or profit from the deals. Further, in an oral statement, Mr. Sewell told the police that he went with Mr. Rose on both occasions in order to protect him. Finally, the jury heard testimony from Richard Woods, an expert in crack dealer operations in East St. Louis. Woods testified that crack dealers protect themselves, their money and their drugs, by bringing buddies or bodyguards with them on drug deals.

From this evidence, a reasonable jury could find that Mr. Sewell both associated with, and participated in, the drug deals. As the government points out, it is difficult to imagine any other credible explanation for Mr. Sewell's presence than to protect or aid Mr. Rose. Thus, even though appellant is correct that the government failed to establish that he participated in price negotiations, handled the drugs, or attempted to intimidate Agent Williams, his proven conduct satisfies both prongs of the *Beck* test—he both associated himself with, and participated in, the illegal transaction undertaken by Mr. Rose. Because the evidence was sufficient to support a conviction without consideration of the hearsay statement, we need not address Mr. Sewell's argument that the district court erred by admitting into evidence a hearsay statement of his co-defendant Troy Rose in violation of Fed.R.Evid. 801(d)(2)(E).

■ Mr. Sewell also contends that he was improperly sentenced for sale of crack cocaine rather than some other form of cocaine base. *See* U.S.S.G. § 2D1.1, note D (defining "cocaine base" for sentencing purposes as "crack"). He argues that there was insufficient evidence adduced at the sentencing hearings to prove that the substance was crack. Because this argument was not raised at sentencing, it has been waived. *United States v. Rosalez–Cortez*, 19 F.3d 1210, 1220 (7th Cir.1994). Therefore, we review Judge Stiehl's sentencing under the

---

1. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission is liable as a principal."

plain error standard. *Id. To reverse we must find any error obvious and significantly prejudicial.* United States v. Blythe, *944 F.2d 356, 359 (7th Cir.1991).*

At sentencing, the government bore the burden of proving by a preponderance of the evidence that the substance was crack cocaine. *United States v. Benjamin,* 116 F.3d 1204, 1207 (7th Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 428, 139 L.Ed.2d 328 (1997). If the government fails to meet this burden and the defendant is sentenced under crack cocaine guidelines anyway a district court commits reversible error. *United States v. Adams,* 125 F.3d 586, 593 (7th Cir.1997). Here the government met its burden.

The record reflects that the appellant and Mr. Rose worked together to obtain and distribute crack cocaine, and that Agent Williams negotiated with Mr. Rose for crack cocaine. Agent Williams paid a price commensurate with the going rate for crack cocaine. An expert witness testified that he was familiar with the substance sold in this case and implied it was crack cocaine. Most importantly, the substance was admitted into evidence and made available for the court and jury's inspection. That jury found the defendant guilty of distributing "cocaine base (commonly known as 'crack')." *See Benjamin, supra* at 1207 (noting the importance of the jury finding defendant guilty of conspiring to distribute a form of " 'cocaine commonly known as crack' "). Under both our case law and the applicable Guidelines' definition, it is difficult to see what other conclusion the district court could have reached besides that the substance was crack cocaine. *See id.*; *United States v. Wade,* 114 F.3d 103, 106 (7th Cir.1997).

Finally, Mr. Sewell argues that the district court erred in its belief that it had no legal basis for a downward departure in sentencing. He contends that the case should be remanded. At trial, Judge Stiehl noted that he was troubled by having to sentence Maurice Sewell to ten years in prison, and that if he could depart downward he would. Mr. Sewell was twenty-one years old, had no criminal record, was not the principal offend-

er and had made efforts to better himself before committing the attendant crime. Despite this concern, the district court found no legal basis for downward departure. Because this involves a matter of statutory interpretation, we review Judge Stiehl's decision *de novo. United States v. Jarrett,* 133 F.3d 519, 535 (1998)

In *United States v. Koon,* the Supreme Court noted that the Sentencing Guidelines recognized certain "special factors" a judge might wish to take into account at sentencing. 518 U.S. 81, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996); *United States v. Carter,* 122 F.3d 469, 474 (7th Cir.1997). According to the Court there are four categories of sentencing factors: forbidden, encouraged, discouraged and unmentioned. *Koon,* 518 U.S. at 94–96, 116 S.Ct. 2035; *United States v. Schulte,* 144 F.3d 1107, 1109 (7th Cir.1998). Forbidden factors, such as race, sex, national origin, creed, religion, socio-economic status, drug or alcohol dependence or lack of guidance as a youth can never be a basis for a departure. *Id.* Discouraged factors, such as age, education, family and community ties and employment record are not ordinarily relevant to granting a downward departure— they are only relevant in "exceptional cases." *Id. See also* U.S.S.G. Ch. 5, Part H, into comment. Encouraged factors are explicitly contemplated as grounds for departures. *Schulte,* 144 F.3d at 1109. Examples of encouraged factors include the defendant's role in the offense, criminal history, and dependence on criminal activity for a livelihood. *See* U.S.S.G. § 5H1.7–5H1.9; *Schulte* at 1109.

The issues Mr. Sewell raises as grounds for downward departure fit into the *Koon* grid. As noted, judges are discouraged from taking into account issues such as age, education and employment history unless the defendant's case is "exceptional." Appellant provided no evidence, either here or in the trial court, that his case met this definition.

The issue of Mr. Sewell's participation in the crime is less straightforward. A defendant's level of participation in the crime is one of the "encouraged factors" under *Koon. Koon* also noted, however, that if the "encouraged factor [is] already taken into

account by an applicable Guideline, the court should depart only if the factor is present to an exceptional degree." *Koon,* 518 U.S. at 94, 116 S.Ct. 2035; *United States v. Gonzalez–Portillo,* 121 F.3d 1122, 1124 (7th Cir. 1997). As the Tenth Circuit noted in *United States v. Gallegos,* this "encouraged factor" (the defendant's participation level in the crime) is already taken into account by an applicable Guideline—namely U.S.S.G. § 3B1.2. 129 F.3d 1140, 1144–45 (10th Cir. 1997). Under § 3B1.2 a district court can grant a two-level offense reduction if the defendant was a minor participant in the crime. However, where a court chooses not to use § 3B1.2, or has already granted the maximum offense reduction under it, it is inappropriate to rely on § 5H1.7 for a downward departure. *Gallegos, supra* at 1144. Thus, Judge Stiehl's conclusion that he had no legal basis for a downward departure was correct.

■■■ As to § 3B1.2, which provides for a two-level offense reduction for "minor participation" in the offense, the presentencing report and recommendation indicate that the probation officer considered the reduction, but recommended against it because the probation officer believed Mr. Sewell's culpability was equivalent to Mr. Rose's culpability. Judge Stiehl adopted these findings without objection from Mr. Sewell's attorney. At sentencing, Mr. Sewell's counsel never sought an offense adjustment under § 3B1.2, instead asking only for the downward departure Judge Stiehl denied.[2] Although it might not have been error to grant a § 3B1.2 adjustment *sua sponte* in this case, a district court is not required to do so. *See United States v. Moore,* 991 F.2d 409, 413 n. 2 (7th Cir.1993). It is not incumbent upon the district court to scour the Guidelines for a way to reduce a defendant's sentence when defense counsel fails to make a proper request. Thus the lack of an offense adjustment here was not error. Accordingly, the district court's judgment is AFFIRMED.

---

2. No mention of § 3B1.2 was made by Mr. Sewell's appellate counsel either.