**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 18 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GLEN RAY NEAL,

    Defendant - Appellant.

No. 00-6085

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CR-99-131-R)**

_____

Teresa Brown, Assistant Federal Public Defender (William P. Earley, Assistant Federal Public Defender, on the brief), Oklahoma City, Oklahoma, for Defendant-Appellant.

Edward J. Kumiega, Assistant U.S. Attorney (Daniel G. Webber, Jr., United States Attorney, with him on the brief), Office of the U.S. Attorney, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

_____

Before **LUCERO** and **McKAY**, Circuit Judges, and **BROWN**, District Judge.[*]

_____

[*]The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

**McKAY**, Circuit Judge.

_____

Defendant-Appellant Glen Ray Neal pleaded guilty to possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). At sentencing, the district court departed upward from the applicable sentencing guideline based on Appellant's "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," a specific offense characteristic under the child pornography trafficking guideline. U.S. S ENTENCING GUIDELINES MANUAL § 2G2.2(b)(4) (1998). [1] Appellant timely appealed, challenging the district court's decision to depart.

## I. Background

On June 28, 1999, officers from the Elk City, Oklahoma, police department questioned Appellant in his apartment regarding the alleged sexual abuse of a minor that had taken place there. During the interview, the officers requested and received permission to search the home, upon which they discovered ten printed images of nude minors engaged in sexually explicit conduct.

---

[1] The U.S. Sentencing Guidelines Manual (hereinafter "U.S.S.G.") § 1B1.11(a) states: "The court shall use the Guidelines Manual in effect on the date that the Appellant is sentenced." Appellant was sentenced on February 24, 2000. Br. of Appellee at 2. Therefore, all citations to the Guidelines Manual in this opinion refer to guideline amendments that were incorporated effective November 1, 1998.

In the course of an FBI investigation, Appellant confessed that he had found the pornographic images on the Internet and printed them three years prior to his arrest. In addition, Appellant also admitted that: (1) on July 25, 1998, he pleaded guilty in state court to aiding a minor in a drug crime and was prohibited from contact with minors that were unaccompanied by a parent; (2) three minor males, whom the investigation designated as John Does #1, 2, and 3, had spent varying amounts of time at Appellant's apartment, in violation of his probation; and (3) he told the minors that he was a homosexual, wrestled and played with them, and slept in the same bed with one of them (John Doe #2) on two separate occasions. Nevertheless, Appellant denied that he had ever engaged in a sexual relationship with any of them. Tr. at 22-25.

The three minor males, however, informed the FBI of Appellant's repeated attempts to initiate intimate relationships with them. John Doe #1 stated that he saw Appellant rub his genitalia on the back of John Doe #2, and that soon thereafter Appellant attempted to kiss and offered to engage in oral sex with John Doe #1. John Doe #2 revealed that Appellant had shown him computer images of two men having sex and touched John Doe #2's genital area on occasions, including one time at a Motel 6. John Doe #3 said that Appellant had touched his leg in the past, endeavoring to engage in some sort of sexual relationship with him. The morning after the incidents involving John Doe #1 occurred, John Doe #1

reported the episode to his mother, who called the police. Tr. at 11-21.

Following Appellant's guilty plea to child pornography possession, the government moved for an upward departure from the applicable sentencing guideline, U.S.S.G. § 2G2.4, based on Appellant's molestation of the three minors. Section 2G2.4 did not identify child molestation as a part of the guideline, its enhancements, or related commentary. However, § 2G2.2, the relevant guideline for trafficking in child pornography, included a specific offense characteristic requiring a five-level enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4). The government argued that the court should depart upward from § 2G2.4 because the Sentencing Commission had failed to consider the sexual abuse of a minor as a specific offense characteristic for child pornography possession as it had for child pornography trafficking. The district court agreed with the government: "I think it must have been an oversight that Section 4 under 2G2.2 was not also listed . . . under 2G2.4." Tr. at 60. The court then departed from the sentencing range of 24 to 36 months by five levels, sentencing Appellant to 51 months of imprisonment.

Appellant objects to the district court's upward departure on three fronts. First, Appellant contends that the court based its upward departure on an impermissible factor, since the Commission could not have failed to consider the sexual abuse of a minor in such a proximately located offense characteristic.

-4-

Second, Appellant asserts that his possession of the child pornography was "totally irrelevant" to the allegations of sexual abuse. Third, Appellant argues that his actions were insufficient to constitute "engag[ing] in a pattern of sexual abuse or exploitation of a minor" under U.S.S.G. § 2G2.4(b).

## II.  Standard of Review

In United States v. Collins, 122 F.3d 1297, 1302-03 (10th Cir. 1997), we identified four inquiries that must be made in reviewing departure decisions following the Supreme Court's significant decision in Koon v. United States, 518 U.S. 81 (1996):

> [I]n determining whether the district court abused its discretion in departing from the Guidelines, appellate courts after Koon must evaluate: (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the Appellant from the applicable Guideline heartland thus warranting departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

Collins, 122 F.3d at 1303.  Appellant challenges the district court's decision regarding the first and third of these inquiries. [2]

---

[2]Appellant does not dispute the district court's determination that "engaging in a pattern of activity involving the sexual abuse or exploitation of a minor" removed Appellant from the applicable guideline heartland, nor does he contest the reasonableness of the degree of departure.  Therefore, the second and fourth inquiries in Collins are satisfied and require no discussion.  See Collins, 122 F.3d at 1308 n.8.

As instructed in Koon, we review departures from the Sentencing Guidelines under a "unitary abuse of discretion" standard. Collins, 122 F.3d at 1302 (citing Koon, 518 U.S. at 96-100). "A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon, 518 U.S. at 98. However, "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." Id. at 100.

### III. Impermissible Factors

Appellant first contends that the district court used an impermissible factor as a basis for its upward departure. The court noted that the Commission had made "the sexual abuse or exploitation of a minor" a specific offense characteristic for trafficking in child pornography, but not for child pornography possession. This, the court held, was "an oversight" by the Commission. Tr. at 60. The court then departed from the child pornography possession guideline, using the exploitation offense characteristic. Appellant disputes the district court's conclusion, reasoning that it was incorrect to assume that the Commission failed to consider exploitation as an offense characteristic for child pornography possession since the two guidelines were listed consecutively and directed to the same general topic.

Appellant's contention is reasonable. This court has declared on a number of occasions that sentencing guidelines are to be "interpreted as if they were a statute or court rule." United States v. Gay, 240 F.3d 1222, 1230 (10th Cir. 2001) (citing United States v. Checora, 175 F.3d 782, 790 (10th Cir. 1999)). Under normal statutory construction, we would not assume that the failure to include some item in a statute is an oversight that the court may correct. In fact, in light of the Commission's inclusion of the "sexual abuse or exploitation of a minor" in the guideline immediately prior to the applicable guideline in this case, we could as easily assume the opposite—that the Commission specifically considered the same offense characteristic for both and intentionally excluded it from the child pornography possession guideline. See True Oil Co. v. C.I.R., 170 F.3d 1294, 1300 (10th Cir. 1999) (noting that when courts interpret statutory language, they look not only at the specific statute at issue but also examine the statute in context with related statutes); ABC Rentals of San Antonio, Inc. v. C.I.R., 142 F.3d 1200, 1207 (10th Cir. 1998) (same). However, Congress and the Commission have articulated a decidedly different method for determining when the Commission has failed to "consider" a factor in a particular guideline, and thus when a district court may depart from it.

Under the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. §§ 991-98, Congress authorized district courts to depart from the

Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). In ascertaining whether a particular circumstance was "not adequately taken into consideration," courts must "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." Id. The Commission, in turn, declares that except for certain "forbidden" factors, [3] it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b).

The Commission does, however, provide two separate lists of what courts have labeled "discouraged" and "encouraged" factors. "Discouraged" factors, [4] located in subpart 5H1 of the Guidelines, are specific factors that the Commission determined were "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." U.S.S.G. ch. 5, pt. H,

---

[3]The "forbidden" factors are race, sex, national origin, creed, religion, socioeconomic status, 1995 U.S.S.G. § 5H1.10; lack of guidance as a youth, § 5H1.12; drug or alcohol dependence, § 5H1.4; and economic hardship, § 5K1.12.

[4]The "discouraged" factors are: age, § 5H1.1; educational and vocational skills, § 5H1.2; mental and emotional conditions, § 5H1.3; physical condition, § 5H1.4; employment record, § 5H1.5; family ties and responsibilities, and community ties, § 5H1.6; military, civic, charitable, or public service, employment-related contributions, and record of prior good works, § 5H1.11.

introductory cmt. "Encouraged" factors,[5] listed in Part 5K, are specific factors provided by the Commission "to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines." U.S.S.G. § 5K2.0. Courts have also referred to factors that are "unmentioned in the Guidelines." Koon, 518 U.S. at 96.

Based on these four types of factors—forbidden, discouraged, encouraged, and unmentioned—the Supreme Court in Koon provided a series of questions to assist courts in determining whether a sentencing factor is legally permissible:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines taken as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland.

Koon at 95-96 (emphasis added); see also Collins, 122 F.3d at 1302.

---

[5]The "encouraged" factors are: death, § 5K2.1; physical injury, § 5K2.2; extreme psychological injury, § 5K2.3; abduction or unlawful restraint, § 5K2.4; property damage or loss, § 5K2.5; weapons and dangerous instrumentalities, § 5K2.6; disruption of governmental function, § 5K2.7; extreme conduct, § 5K2.8; criminal purpose, § 5K2.9; victim's conduct, § 5K2.10; lesser harms, § 5K2.11; coercion and duress, § 5K2.12; diminished capacity, § 5K2.13; public welfare, § 5K2.14; voluntary disclosure of offense, § 5K2.16; high-capacity, semiautomatic firearms, § 5K2.17; and violent street gangs, § 5K2.18.

The Court's formulation contemplates the majority of potential departure factors; however, it fails to take into account the question posed to us in this case: how do courts treat those factors that are neither forbidden, discouraged, encouraged, nor "unmentioned" in the Guidelines? In other words, how should courts evaluate the legal permissibility of factors that have not been designated as "forbidden," "encouraged," or "discouraged," yet are found in separate guidelines, policy statements, and commentary? This is the focus of our inquiry, since Appellant challenges the district court's use of a specific offense characteristic from a separate guideline as a departure factor. It is also an inquiry we are obliged to undertake, as the Guidelines' Application Instructions charge us to examine other parts of the Guidelines for direction in sentencing: "Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures [which contain the forbidden, discouraged, and encouraged factors], <u>and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence</u>." U.S.S.G. § 1B1.1(i) [6] (emphasis added). As instructed, we look to other policy statements and commentary in the Guidelines for further guidance.

Initially, the Introduction to the Guidelines Manual notes that many of the

---

[6]The Commission later reiterates that "the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines." U.S.S.G. § 1B1.7.

guidelines specifically direct the court to other guidelines in sentencing. The Commission describes "guided" departures as "involv[ing] instances in which the guidelines provide specific guidance for departure by analogy." U.S.S.G. ch. 1, pt. A, introductory cmt. More pertinent to our inquiry, however, is the Commission's policy statement in subpart 5K2.0, entitled "Grounds for Departure":

> [A] factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under other guidelines. Therefore, if a weapon is a relevant factor to sentencing under one of these other guidelines, the court may depart for this reason.

U.S.S.G. § 5K2.0. Thus, the Commission has unequivocally approved the district courts' use of specific offense characteristics of other guidelines as bases for departure from the applicable guideline at sentencing. These factors are in one sense "encouraged" by the Commission, since the Commission has approved them for use in other guidelines. However, they are distinct from the category of factors that courts have called "encouraged," in that they are not specifically enumerated by the Commission in Part 5K. [7] These factors are also neither forbidden,

---

[7]Some circuits have parroted the Koon definition of "encouraged" factors in a manner that could be misleading. See United States v. Tocco, 200 F.3d 401, 432 (6th Cir. 2000); United States v. Velez, 185 F.3d 1048, 1053 (9th Cir. 1999); United States v. Carter, 122 F.3d 469, 473 n.4 (7th Cir. 1997). The Court in Koon stated: "Encouraged factors are 'those the Commission has not been able to take into account fully in formulating the guidelines.'" Koon, 518 U.S. at 94

(continued...)

-11-

discouraged, nor unmentioned in the Guidelines.  Instead, they are identifiable in policy statements, commentary, specific offense characteristics, base offense levels, and other areas of the Guidelines.  Aligning ourselves with the language used by the Commission, we refer to these departure factors as "analogous"

---

[7](...continued)
(quoting U.S.S.G. § 5K2.0).  This definition, taken out of context, could be understood as inviting courts to regard all factors that have not been taken into account by the Commission as "encouraged" for departure.  The overbreadth of this interpretation is apparent.  In reality, the Court specified that this definition applied to the particular factors cited in Part 5K.  Before rendering the definition, the Court stated:  "The Commission provides considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure."  Koon, 518 U.S. at 94.  A panel of this circuit has even mislabeled an analogous factor as "encouraged" under this broad definition.  See United States v. Shumway, 112 F.3d 1413, 1428 (10th Cir. 1997).  Because that mischaracterization was dicta, we are not bound by it.  See, e.g., Bates v. Dep't of Corrections, 81 F.3d 1008, 1011 (10th Cir. 1996) (holding that "a panel of this Court is bound by a holding of a prior panel" but "is not bound by a prior panel's dicta."); see also OXY USA, Inc. v. Babbitt, 230 F.3d 1178, 1184 (10th Cir. 2000) (defining dicta as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it") (quoting United States v. Crawley, 837 F.2d 291, 292 (7th Cir. 1988)).  Fortunately, a few of our sister circuits have recognized the specificity of the "encouraged" factors following Koon.  See United States v. Schulte, 144 F.3d 1107, 1109 (7th Cir. 1998) ("Encouraged factors, by contrast, are explicitly contemplated as grounds for departures.");  United States v. McBroom, 124 F.3d 533, 538 (3d Cir. 1997) ("The factors contained in subpart 5K2 are the so-called 'encouraged factors.'"), Collins, 122 F.3d at 1301 (noting that "the Guidelines list factors that are encouraged") (emphasis added);  United States v. Rivera, 994 F.2d 942, 948 (1st Cir. 1993) ("In certain circumstances, the Guidelines offer the district court, which is considering whether to depart, special assistance, by specifically encouraging departures.  Part 5K lists a host of considerations . . . .") (emphasis added).

-12-

factors. <u>See</u> U.S.S.G. ch. 1, pt. A, introductory cmt. (discussing "departure by analogy").

In cases predating <u>Koon</u>, this Circuit sanctioned the use of analogous factors as bases for departure. In so doing, we have allowed district courts to borrow from other guidelines both offense characteristics and base offense levels. In <u>United States v. Baker</u>, 914 F.2d 208, 211 (10th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1099 (1991), we held the use of a firearm to be a valid factor for an upward departure for receiving explosives in interstate commerce under § 2K1.6, even though that factor was only listed as a specific offense characteristic in § 2B3.1(b). In <u>United States v. Davis</u>, 912 F.2d 1210 (10th Cir. 1990), we held that the quantity of drugs involved, a base offense level under § 2D1.1, was a valid basis for an upward departure in sentencing the defendant under § 2D1.8—"Renting or Managing a Drug Establishment." <u>See also</u> <u>United States v. Sardin</u>, 921 F.2d 1064, 1066 (10th Cir. 1990) (reiterating our holding in <u>Davis</u> for one of Davis's co-defendants). In <u>United States v. Keys</u>, 899 F.2d 983 (10th Cir.), <u>cert. denied</u>, 498 U.S. 858 (1990), this court approved the use of the Appellant's prison disciplinary record, a base offense level under § 2P1.2, as the basis for an upward departure on the charge of weapons possession while in prison. We there held: "The mere fact that a factor is mentioned for one offense does not mean that it cannot be applied to other offenses." <u>Keys</u>, 899 F.2d at 990. In all four of these

cases, we cited to the Commission's statement (quoted above) regarding analogous factors. See U.S.S.G. § 5K2.0.

In addition, we have repeatedly held that analogizing to other guidelines is a primary method by which district courts may justify the reasonableness of their departure. See, e.g. , United States v. Bartsma , 198 F.3d 1191, 1196 (10th Cir. 1999) ("In Collins , we clearly reaffirmed our existing case law requiring a district court to 'specifically articulate reasons for the degree of departure' using any 'reasonable methodology hitched to the Sentencing Guidelines,' including 'extrapolation from or analogy to the Guidelines.'"); United States v. Whiteskunk , 162 F.3d 1244, 1253 (10th Cir. 1998) (reaffirming that Koon did not affect our pre- Koon "approach requiring the district court to state with particularity and with reference or analogy to the Guidelines the basis for its degree of departure."). We find an even clearer basis in the Guidelines for allowing the use of analogous factors as actual departure factors. Thus, we hold that analogous factors are legally permissible bases for sentencing departures.

Although none of our sister circuits have discussed the use of analogous factors in relation to the Koon formulation, our holding today is in accord with those circuits that have examined whether analogous factors may be permissible departure factors. A number of courts have held pre- Koon that drug quantity, a base offense level under § 2D1.1, was a proper basis for departure under other

guidelines.  See United States v. Cullens , 67 F.3d 123, 125 (6th Cir. 1995);   United States v. Williams , 895 F.2d 435, 438 (8th Cir. 1990);   United States v. Crawford , 883 F.2d 963, 966 (11th Cir. 1989);   United States v. Ryan , 866 F.2d 604, 607-08 (3d Cir. 1989);  United States v. Correa-Vargas , 860 F.2d 35, 37-38 (2d Cir. 1988). The Third Circuit has also approved the analogous use of role in the offense under § 3B1.2,  United States v. Bierley , 922 F.2d 1061, 1069 (3d Cir. 1990), and obstruction of justice under § 3C1.1,   United States v. Cherry , 10 F.3d 1003, 1009-10 (3d Cir. 1993).  In discussing whether single acts of aberrant behavior may be analogously used, the Ninth Circuit noted:  "Section 5K2.0 also suggests that courts should reason by analogy from one guideline to the next."   United States v. Fairless , 975 F.2d 664, 668 n.2 (9th Cir. 1992).

Recently, the First Circuit confronted a factual situation and sentencing departure nearly identical to the instant action.   See United States v. Amirault , 224 F.3d 9 (1st Cir. 2000).  In   Amirault , the Appellant pleaded guilty and was sentenced under §2G2.4 for the possession of child pornography.  The district court departed based on Appellant's alleged sexual assaults on two minor females, using § 2G2.2(b)(4) as an analogous factor.  The First Circuit stated:

> This approach was sound.  A sentencing court is free to make suitable comparisons and draw plausible analogies in considering whether to depart from the guideline sentencing range.  So it was here:  although the guideline applicable to the offense of conviction was section 2G2.4 (the possession guideline), not section 2G2.2 (the trafficking guideline) . . . the district court was entitled to examine factors set out

in section 2G2.2(b) in order to evaluate the appropriateness of a departure. Simply because a specific offense characteristic is listed explicitly in one guideline but not another does not mean that the factor may not be relevant to the departure calculus in respect to an offense under the latter guideline.

Id. at 12 (citing U.S.S.G. § 5K2.0).

We agree with the reasoning of the First Circuit. Applying this analysis to the instant action, Appellant disputes the district court's use of an analogous factor in his sentence. The applicable guideline, § 2G2.4, contains no reference to child molestation. Child molestation is not a forbidden, discouraged, or a listed "encouraged" factor. It is also not "unmentioned" in the guidelines, since it is a specific offense characteristic—the "sexual exploitation of a minor"—in § 2G2.2, the child pornography trafficking guideline. In this situation, the Commission has acknowledged that the exploitation offense characteristic in the trafficking guideline may be used analogously as a basis for departure from the possession guideline. Thus, we hold that "the sexual abuse of a minor" was not an impermissible factor in supporting the district court's upward departure.

## IV. Relevant Conduct

Appellant next protests that the alleged child molestation is an impermissible factor because it is "totally irrelevant" to the charge of child pornography possession. He contends that U.S.S.G. § 1B1.3 allows the district court to consider only "relevant conduct," that we have rejected "totally

irrelevant" conduct as permissible factors in <u>United States v. Haggerty</u>, 4 F.3d 901 (10th Cir. 1993), and that there is no evidence linking his possession of these images to the alleged child molestation. This argument was also pursued in <u>Amirault</u>. <u>See</u> <u>Amirault</u>, 224 F.3d at 11-12. Appellant's contentions are erroneous for a number of reasons.

First, the district court did not base its departure on a determination that the child molestation was "relevant conduct" under § 1B1.3; instead, the court concluded that the acts warranted an upward departure under section 5K2.0. <u>See</u> <u>id.</u> at 11. The court in <u>Amirault</u> held:

> The relevant conduct guideline is not directed specifically at section 5K2.0 departures. Rather, its purpose is to determine adjustments to the base offense level, taking into account a defendant's overall behavior. Adjustments and departures are different species, dissimilar both in purpose and kind. Not surprisingly, therefore, upward departures are allowed for acts of misconduct not resulting in conviction, as long as those acts, whether or not relevant conduct in the section 1B1.3 sense, relate meaningfully to the offense of conviction.

<u>Id.</u> at 12 (citations omitted). We adopt the First Circuit's reasoning in this case.

Second, even if we were considering Appellant's sexual assaults under the relevant conduct guideline, Congress and the Commission have authorized sentencing courts to consider a wide variety of a defendant's acts in imposing criminal sentences. Congress has stated: "No limitation shall be placed on the information concerning the background, character, and conduct of a person

-17-

convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Even § 1B1.3, which Appellant cites, defines "relevant conduct" as "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a). Appellant has admitted to possessing the child pornography seized from his file for three years before and during the time that the molestation took place. His molestation easily falls within the purview of matters relevant to the district court's decision.

Third, our holding here does not run afoul of our dictum in Haggerty. In that case, we hypothesized in a footnote that "if we were presented with a case where a district court departed based on a totally irrelevant circumstance, we would not hold such a departure authorized merely because the circumstance was of a kind omitted by the Guidelines." Haggerty, 4 F.3d at 903, n.2. Obviously, we are not dealing with a circumstance omitted by the Guidelines, but rather a specifically contemplated offense characteristic from a separate guideline, analogized to Appellant's situation. More importantly, we do not approve of the factor merely because it was omitted from the applicable sentencing guideline, § 2G2.4, but rather because this factor and its analogous application were sanctioned by the Commission, as discussed above.

Finally, while Appellant did not show his child pornography to the children

-18-

he molested, his molestation is not "totally irrelevant" to his child pornography possession. Congress has prohibited the possession of child pornography specifically because viewing such images often leads to molestation.[8] The district court found that Appellant showed images of sexually explicit (adult) conduct to a ten-year-old prior to molesting him. Tr. at 19. John Doe #1's allegations of Appellant's molestation were what prompted investigators to search Appellant's home, which led to the discovery of the child pornography in his files. PSR § 4. We have no reservation in holding that Appellant's child molestation was not "totally irrelevant" to his child pornography possession.

## V. Factual Basis for Departure

Finally, Appellant argues that the district court's departure was erroneous because the government did not adequately prove that he "engag[ed] in a pattern of activity involving the sexual abuse or exploitation of a minor," U.S.S.G. §

---

[8]"Congress specifically found that "child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." In addition, "prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children . . . ." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, § 101(a), at § 121 subsection 1, 1996 U.S.C.C.A.N. (110 Stat.) 3009, 3009-26 reprinted in 18 U.S.C. § 2251 note ("Congressional Findings").

2G2.2(b)(4), which the court used as a departure factor. In determining whether a defendant's actions justify departure under a particular factor, we must discern "whether the record sufficiently supports the factual basis underlying the departure." Collins, 122 F.3d at 1303. In so doing, we "ascertain whether the circumstances cited by the district court to justify departure actually exist in the instant case," requiring us to "search only for a sufficient factual basis to justify departure." United States v. White, 893 F.2d 276, 278 (10th Cir. 1990). The district court's factual findings will be overturned only if they are clearly erroneous. See id. (citing 18 U.S.C. § 3742(e)).

The district court found that there was "certainly very strong circumstantial evidence that Mr. Neal is a pedophile, that he had young children in his home, and he was exploiting these young children." Tr. at 60. The court examined the findings of the FBI investigation, which revealed that Appellant made an indecent proposal to John Doe #1, touched the genitals of John Doe #2 on multiple occasions, showed John Doe #2 images of two men having sex, and touched the leg of John Doe #3 for the purpose of having a sexual relationship with him. After reviewing the record, we cannot say that the district court's finding that Appellant "engag[ed] in a pattern of activity involving the sexual abuse or exploitation of a minor" was clearly erroneous.

For the foregoing reasons, the decision of the district court is AFFIRMED.