# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 02-3381

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MARK A. MILLER,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:02CR00071-001—**John Daniel Tinder**, *Judge.*

---

ARGUED JULY 8, 2003—DECIDED SEPTEMBER 8, 2003

---

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* In February 2002 Mark Miller's wife found child pornography on the couple's home computer and turned him over to authorities. After Miller pleaded guilty to possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), a federal district court sentenced him to 46 months' incarceration and three years' supervised release. On appeal[1] Miller argues that his sentence was too severe. Specifically, he contends that the court erred by failing to award him a three-level reduction in his offense level for accepting responsibility for the crime under U.S.S.G. § 3E1.1.

---

[1] The government filed a cross-appeal, No. 02-3617, which later was voluntarily dismissed under Fed. R. App. P. 42(b).

Miller also argues that the court erred by imposing an upward departure under U.S.S.G. § 5K2.0 because the images depicted sadistic, masochistic, and violent behavior. We affirm.

In February 2002 Cheryl Miller told the Marion County Sheriff's Department that she had discovered a large amount of child pornography on a family home computer. Mrs. Miller explained that she and her husband were separating, and that she had found the images while retrieving photos and financial records from the computer.

Soon thereafter, police seized the computer and discovered 113 folders containing over 11,000 images of adult pornography and approximately 700 to 750 images of child pornography. The folders were highly organized, with labels such as "rape," "death," "boys," "doinkin," "bumpin uglies," and "girl action." Several of the images depicted rape and child sex. Others depicted an infant and young children being bound and tied and penetrated with a penis. Cookie files revealed that Miller had visited several child-porn websites.

After he was indicted, Miller moved to modify the terms and conditions of his pretrial release; he wanted to live with family members rather than in a community corrections center. He pleaded guilty a week later. After the district court accepted Miller's plea, it heard testimony on his motion. At this hearing Miller testified that he was not a pedophile and did not derive sexual gratification from the images. On cross-examination Miller testified that he had been collecting the pornographic images for approximately two years. He stated that he stumbled on these images and that they angered him. Miller originally intended to turn them over to the police, but over time he became drawn to them as a means to fuel his depression over his brother's death. Miller explained that he felt guilty whenever he was happy because his brother was gone, and that he collected the images to make himself feel bad. The district court,

however, ordered that he be detained at the Marion County Jail.

Prior to sentencing Miller moved for a three-level downward adjustment for acceptance of responsibility under § 3E1.1. In support of his motion, Miller submitted a letter from Dr. George Parker, a psychiatrist who opined that Miller was not a pedophile. The district court, however, denied Miller's request. It also departed upward the equivalent of two offense levels under § 5K2.0 because a small number of the images were sadistic, masochistic, and violent.

On appeal Miller argues that he was entitled to a downward adjustment under § 3E1.1 because he promptly admitted to possessing the unlawful images, expressed remorse and contrition for his acts, and entered a timely guilty plea. We review the district court's determination for clear error. *United States v. Hendricks*, 319 F.3d 993, 1009 (7th Cir. 2003), *petition for cert. filed*, (May 21, 2003) (No. 02-11129). Miller bears the burden of clearly demonstrating acceptance of responsibility by a preponderance of the evidence. *Id.* According to Miller, the court was wrong to deny his motion on the ground that it did not believe his explanation for possessing the materials, which he claims doesn't matter. In support he cites *United States v. Gonzalez*, 16 F.3d 985, 991 (9th Cir. 1993), which held that a sentencing court cannot consider the defendant's professed reasons for committing a crime in determining whether to reduce for acceptance of responsibility. *But see United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995) (explicitly rejecting *Gonzalez*, holding that "[a] defendant's statements regarding his motivation are relevant in that they shed light on the sincerity of an asserted acceptance of responsibility").

But contrary to Miller's assertion, the district court did not clearly err by refusing his request for a downward adjustment. The court concluded that Miller was mini-

mizing or rationalizing his behavior to get a favorable change in the conditions of his release. Specifically, the court opined that Miller was trying to convince the court that he was not a danger to the community to enable him to leave the halfway house and live with family members. And the court also believed that he was trying to save face with his family:

> So, to me it's evident that he is minimizing his purpose in having the child pornography and the wrongfulness of his conduct in ways that do not persuade me that he has accepted responsibility for his offense. He has said the things that he needs to say to plead guilty, but he is operating on a level of denial that I conclude feels he needs to maintain so that his family will stay supportive of him and loyal so that he can justify really this wasn't for sexual purposes; it was for the purposes that he testified about, maintaining that front which is not an acceptance of responsibility.

> The direct and circumstantial evidence persuades me that his acquisition and maintenance of child pornography involved a sexual interest. Doctor Parker was operating on limited information. He did not have the benefit of the detailed explication, of the manner of maintenance of the files. He did not really have any way of testing the validity of Mr. Miller's implausible explanation for maintaining that collection of child pornography, and I don't find—there is the conclusion by Doctor Parker that Mr. Miller is not a pedophile, but I do not find that to be an explanation, or an endorsement of the plausibility of Mr. Miller's rationalization for why he maintained a collection, and in fact at page four Dr. Miller writes Mr.—or Doctor Parker writes Mr. Miller could not offer a clear reason as to why he collected these images. And Doctor Parker I guess perhaps for reasons in the psychiatric field accepts the explana-

tion, but he in no way endorses it as plausible. And I don't find it to be either.

I find it to be a minimization, a rationalization of his conduct and such that this defendant is not eligible for an acceptance of responsibility reduction under section 3E1.1. of the sentencing guidelines.

I think I understand why he took the position in front of me that he did. I think it was to convince me that really this looks worse than it is. It's not— there's no potential for harm to the community. And I think he does it because in part it is his goal to have those around him supportive of him. And in part because once you have started down that course, you just can't turn around and say: Gee, sister or mother, what have you, I lied to you about that. Really here's why I had it. And it's also I'm sure for him a very difficult admission that he did have an interest related to gratification as opposed to the reasons that he has stated. . . .

(App. at 12-14.)

This court has implicitly sided with the Sixth Circuit rather than the Ninth in evaluating acceptance of responsibility. Just because Miller owned up to the elements of the offense does not mean that he is necessarily entitled to a downward adjustment—this court also requires defendants to honestly acknowledge the wrongfulness of their conduct and not minimize it. *See United States v. Lopinski*, 240 F.3d 574, 575 (7th Cir. 2001) (recognizing that the purpose of § 3E1.1 is not only to induce guilty pleas, but also to reduce recidivism by having defendants face up to the wrongfulness of their conduct); *see also United States v. Travis*, 294 F.3d 837, 840-41 (7th Cir. 2002); *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999); *United States v. Grimm*, 170 F.3d 760, 766 (7th Cir. 1999); *United States v. Bomski*, 125 F.3d 1115, 1119 (7th Cir. 1997). This court requires that a defendant do more than merely plead guilty,

an approach consistent with that endorsed by the Sixth Circuit in *Greene*. This approach also makes sense—otherwise, § 3E1.1 would have been written to say that merely pleading guilty earns the reduction.

Next, Miller argues that the district court erred by departing outside the range of the sentencing guidelines. We review the district court's decision to depart from the guidelines for abuse of discretion, but whether a particular factor is a permissible basis for departure is a question of law subject to de novo review. *United States v. Bautista*, 258 F.3d 602, 605 (7th Cir. 2001). Under § 5K2.0, a sentencing court may depart from the applicable guideline range if it finds an aggravating or mitigating circumstance not adequately taken into consideration by the guidelines. *See* 18 U.S.C. § 3553(b); *United States v. Dote*, 328 F.3d 919, 925 (7th Cir. 2003). Other than prohibited factors, such as race, sex, and national origin, the guidelines place essentially no limit on the potential factors that may warrant a departure. *Bautista*, 258 F.3d at 605. An "encouraged" factor, *i.e.*, one that is explicitly contemplated as a ground for departure, *United States v. Schulte*, 144 F.3d 1107, 1109 (7th Cir. 1998), may serve as the basis of a departure if it places the conduct outside the "heartland" of cases embodied by the guideline, *Koon v. United States*, 518 U.S. 81, 106 (1996), *i.e.*, if the behavior was more egregious than the behavior normally punished by the appropriate guideline, *United States v. Jones*, 278 F.3d 711, 716 (7th Cir.), *cert. denied*, 536 U.S. 912 (2002), and if the applicable guideline does not already take it into account, *Koon*, 518 U.S. at 95.

Here, the relevant sentencing guideline is U.S.S.G. § 2G2.4, which applies to the possession of child pornography. *See United States v. Holm*, 326 F.3d 872, 876 (7th Cir. 2003, *petition for cert. filed*, June 30, 2003) (No. 03-5193)). At the time of sentencing, § 2G2.4 did not account for the

possession of sadistic, masochistic, or violent images.[2] The district court, however, concluded that the disturbing nature of the images possessed by Miller was an aggravating factor, rendering his crime more egregious than most cases.

Miller argues that the departure was impermissible because § 2G2.4 did not account for sadistic, masochistic, or violent behavior. He notes that U.S.S.G. § 2G2.2(b)(3), which covers the trafficking of child pornography, mandates a four-level increase for trafficking sadistic, masochistic, or violent depictions. And, says Miller, the fact that § 2G2.4 did not have a comparable provision means that the Commission adequately considered the factor in promulgating the guideline, but decided not to punish it. But as recognized by two sister circuits, the Commission's failure to include a comparable provision in § 2G2.4 does not mean that sentencing courts are *prohibited* from considering the possession of sadistic, masochistic, or violent depictions as an aggravating factor. *United States v. Neal*, 249 F.3d 1251, 1254-59 (10th Cir. 2001) (sentencing court may consider factor mentioned in § 2G2.2 as basis for upward departure where sentence is calculated under § 2G2.4); *United States v. Amirault*, 224 F.3d 9, 12 (1st Cir. 2000) (same). Miller criticizes *Neal* and *Amirault*, but the courts in both cases did exactly what § 5K2.0 instructs. *See* § 5K2.0 (". . . a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing.")

---

[2] As part of the PROTECT Act, § 2G2.4 was amended in April 2003 to mirror § 2G2.2; the guideline now mandates a four-level increase for the possession of images depicting sadistic, masochistic, or violent content.

Miller not only challenges the district court's legal determination, but also its factual determination that the case lies outside the heartland of normal cases under § 2G2.4. At first blush, the court's refusal to depart the equivalent of four levels rather than two may suggest that even the court wasn't surprised that some of the images were sadistic or violent. But this argument fails because the court properly referred to the analogous provision contained in § 2G2.2(b)(3), and under that provision only a singular image is needed to trigger the adjustment. *See United States v. Turchen*, 187 F.3d 735, 740 (7th Cir. 1999) (affirming application of § 2G2.2(b)(3) to single image).

AFFIRMED.

A true Copy:

Teste:

_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***