NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 10, 2016
Decided May 19, 2017

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 16-1760

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 1:13-CR-00442 |
| ERIK K. DILLARD, | |
| *Defendant-Appellant.* | John W. Darrah, |
| | *Judge.* |

## O R D E R

For his involvement in a large-scale drug operation, Eric Dillard was convicted in November 2014 under 21 U.S.C. § 841(a)(1), distribution of a controlled substance, and sentenced to 60 months in prison, which was below the recommended Guidelines range. On appeal, Dillard raises two objections to his sentence, which we reject in turn. First, he contends that the evidence before the jury was insufficient to sustain his conviction. Second, he objects to his two-level obstruction of justice enhancement under U.S.S.G.

§ 3C1.1. Each of these objections is without merit. Accordingly, the defendant's conviction and sentence are AFFIRMED.

**I.**

In 2008, the federal Drug Enforcement Agency (DEA) commenced a large-scale investigation into Michael King, a major drug trafficker. One of the agents assigned to the investigation was DEA Special Agent Eric Durante. Durante worked with numerous cooperating sources, including Vincent Todd Howard, who had been a wholesale cocaine customer of King's, purchasing bulk cocaine in Chicago and reselling it in Kentucky. In exchange for a promised sentence reduction, Howard agreed to cooperate with the DEA. On May 26, 2008, Howard alerted Agent Durante that King was expecting a shipment of five kilograms of cocaine in Chicago.

In preparation for this meeting, the DEA provided Howard an unmarked vehicle with a concealed compartment and a device that both recorded and transmitted audio to Durante. Howard was expected to meet with King to pick up the five kilograms of cocaine at 924 East Hyde Park Boulevard in Chicago, Illinois, the residence of Claude McKay, another dealer. Law enforcement maintained surveillance of the building.

After this preparation, Howard entered McKay's residence to meet with King, spent approximately 15-20 minutes inside, and exited the building. For whatever reason, the DEA was unable to hear the conversation inside the residence. As he left, Howard phoned Durante and explained that he was driving to a parking garage near Columbia College to complete the cocaine purchase. He also explained that he was being followed by "Eric" in a blue Mercury Mountaineer. The surveillance team followed Howard's undercover vehicle to a public parking garage and witnessed the blue Mountaineer enter the garage behind it. Five minutes later, the surveillance team witnessed both cars leave the parking garage, followed by a third car, a maroon GMC SUV.

Howard called Agent Durante a second time and quickly explained that "Eric," the driver of the Mountaineer, had handed the driver of the maroon GMC SUV a duffel bag filled with cash, in exchange for twenty-five kilograms of cocaine. Howard told Durante that he kept seven kilograms of cocaine and Eric loaded the remaining eighteen into a hidden compartment in the blue Mountaineer. Unfortunately, the surveillance team failed to follow either the blue Mountaineer or the maroon GMC. They did follow Howard back to McKay's residence, where he handed over two kilograms of cocaine to McKay.

Following this, the surveillance team sought to locate the Blue Mountaineer. One logical place to go was Y2K Performance, a motorcycle shop located on South Vandustrial

Lane in South Holland, Illinois that Agent Durante knew was owned by defendant Eric Dillard. Upon their arrival at around 11pm that night, agents found an unoccupied blue Mountaineer parked outside. A few minutes later they witnessed Dillard leave the motorcycle shop, hop in a red pick-up truck, and drive to a gas station at the end of the block. There, he met with Devin Neal, who later testified that he was the owner of the blue Mountaineer. Neal further testified that he was a drug dealer associated with Michael King, and that at King's request he had modified the Mountaineer to have a concealed compartment in which to store cocaine. At King's instruction, Neal left his Mountaineer with a man he met at Dillard's motorcycle shop on the night of May 26, 2008, swapping for a white Chevrolet Suburban registered to Dillard's motorcycle shop. The government's position is that this man was the defendant, although Neal could not make a positive identification.

Neal had been instructed by King to wait at the nearby gas station in the Suburban, where he met the same man he had lent his Mountaineer, who told him that he could swap the cars back at the motorcycle shop. On the way back to the motorcycle shop, Neal was stopped by the DEA, who searched the white Suburban. Finding nothing, they released Neal. Neal was spooked and took Dillard's white Suburban all the way back to Kentucky, but not before first dropping off the keys to the Mountaineer with Michael King.

Shortly after 11:30 p.m. that night agents stopped Dillard in the red pick-up truck and took him back to his motorcycle shop, where he waived his *Miranda* rights, and signed a written consent to the search of his shop. Agents searched the premises, and a drug-sniffing dog alerted to the blue Mountaineer parked outside. Agents discovered three kilograms of cocaine in the concealed compartment in the blue Mountaineer. Howard had stated that eighteen kilograms were taken by Dillard, but only these three were ever found.

Dillard was indicted on May 22, 2013, on one count of possession of a controlled substance with intent to distribute, 21 U.S.C. 841(a)(1). Defense counsel moved to suppress the cocaine found on May 26, 2008, arguing that officers had no probable cause to stop Dillard that night. Based upon Howard's positive identification of Dillard after the meeting at McKay's residence, the district court rejected the motion to suppress the cocaine, holding that "it was reasonable for officers to conclude there was some probability that Dillard had engaged in crime."

Following a mistrial for failure to reach a unanimous verdict, Dillard's second trial began on November 3, 2014. McKay and Neal testified, both pursuant to cooperation

agreements. McKay testified that Dillard was in McKay's house and involved in the drug deal. Neal simply spoke about his ownership of the Mountaineer.

For his part, Dillard called Lamont Turner as a witness. Turner testified that he was present at Dillard's motorcycle shop on the evening of May 26, 2008, and that he witnessed a person, not Dillard, pull up in the blue Mountaineer, hop into the white Suburban, and leave. This testimony, plus attacks on McKay's and Neal's credibility, supported Dillard's defense; namely, that he had nothing to do with the drug deal on May 26, 2008. Nevertheless, the jury found him guilty. On appeal, Dillard again raises this argument, contending that the evidence before the jury was insufficient to sustain his conviction.

The second issue before us on appeal is a challenge to Dillard's two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1. The grounds for this enhancement were both that Dillard himself insisted that he left McKay's residence in a red pick-up truck, and that Dillard presented Turner's false testimony in his defense. The district court found that both of these actions by Dillard would be "highly material," directly attacking the government's theory of Dillard's guilt by casting doubt on whether Dillard ever drove the blue Mountaineer. Further, the court found these actions to be "obviously done with willful intent to provide false testimony," and so applied the enhancement, which when coupled with his level I criminal history category led to a Guidelines range of 78 to 97 months' imprisonment. The district court instead imposed a below-Guidelines sentence of 60 months. Absent the two-level enhancement, Dillard's Guidelines range would be 63-78 months; a 60-month sentence would still be below the recommendation.

## II.

On appeal are two issues. First, Dillard challenges the sufficiency of the evidence used to convict him. In reviewing the district court's denial of his motion for a new trial, we ask whether, after viewing all evidence in the light most favorable to the prosecution, a rational jury "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Khattab*, 536 F.3d 765, 769 (7th Cir. 2008).

Dillard does not challenge any jury instruction, but simply argues that no rational juror could believe beyond a reasonable doubt, based upon the evidence presented, that he ever participated in a cocaine deal on May 26, 2008. He correctly notes that no witness at trial specifically identified him as the driver of the blue Mountaineer. But this does not mean that a jury could not find beyond a reasonable doubt, based upon the totality of the evidence, that Dillard actually was the driver that night. And in fact, the jury so found.

At trial, McKay testified that Dillard was a part of the four-man meeting at his house that planned the drug deal in the parking garage. Agents testified that they found the blue Mountaineer outside Dillard's motorcycle shop. Neal testified that as a part of a drug deal, he swapped his blue Mountaineer to a man at Dillard's shop for a white Suburban registered to Dillard's shop, and that at Michael King's direction, he returned to a gas station to swap the cars back. Neal testified that during a previous drug deal he had swapped cars in this way at the same location with the same man. He was unable to positively identify Dillard at trial, but officers testified that they witnessed Dillard make the trip to that gas station.

Admittedly, Dillard's story is *possible*. It is possible that a reasonable juror would look at all of this evidence as it appears on paper and acquit him. But the full jury heard Dillard's precise theory regarding his non-involvement, was properly instructed about the law, and still found him guilty. The jury listened to the testimony of witnesses they knew had cooperation agreements with the government, and the jury listened to testimony of agents, and listened to defense counsel and listened to Turner, and still found Dillard guilty. There is certainly sufficient evidence to prove each of the essential elements of 21 U.S.C. § 841(a)(1). Multiple witnesses place him at the scene of a meeting discussing a drug deal. Dillard was seen meeting afterwards with the owner of a car, found on Dillard's property, which contained three kilograms of cocaine. That person was driving Dillard's car. That evidence is sufficient, but add to that a cooperating witness, Howard, who in the middle of the action places a phone call to an agent that "Eric" is driving a blue Mountaineer to participate in the drug deal. A rational juror could have believed that this evidence was credible and that, beyond a reasonable doubt, Dillard had driven the blue Mountaineer and possessed, with intent to distribute, the three kilograms of cocaine.

Ultimately, the paper record cannot possibly account for in-person credibility determinations that this jury undoubtedly made, and on the basis of which they might have found the defendant guilty beyond a reasonable doubt. To reject this jury verdict would be to stand in for the jury as a finder of fact, and "we do not second-guess the jury's assessment of the evidence." *United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008).

Second, Dillard objects to his two-level obstruction of justice enhancement. We review a district court's factual findings underlying this enhancement for clear error, and we review *de novo* whether these findings adequately support the enhancement. *United States v. Taylor*, 637 F.3d 812, 817 (7th Cir. 2011). An enhancement under U.S.S.G. § 3C1.1 is proper where, as here, a defendant knowingly makes a false declaration that "could

affect, to some reasonable probability, the outcome of the judicial process." *United States v. DeLeon*, 603 F.3d 397, 404 (7th Cir. 2010).

Here, there are two equally valid independent bases for the enhancement. First, as a part of his motion to suppress, Dillard made false statements in an affidavit that he left McKay's residence in a red pick-up truck. As noted by the district court, this was rejected by the jury when it convicted him. Second, calling Turner to the stand to falsely testify that someone other than Dillard dropped off the blue Mountaineer could qualify as suborning perjury as well.

The falsity of both offered pieces of evidence was supported by testimony of Howard, Neal, and various agents, as noted by the district court. It was not clear error to find them false as a matter of fact. And given the clarity of Turner and Dillard's statements—that there was no doubt Dillard did not drive the blue Mountaineer—the district court made a reasonable determination that these falsehoods were offered knowingly. In addition to the clarity, the district court cited the failed attempt by Dillard to introduce Turner's testimony into evidence without notice in the first trial: this attempt was accompanied by a statement of defense counsel that Turner was being offered to testify that Dillard did not drive the blue Mountaineer. In other words, Dillard has no basis for even claiming that even if Turner lied, Dillard wasn't expecting it. Dillard knew that Turner was going to testify falsely, and he called him to the stand to do so. Finally, it is beyond doubt that these false statements by Turner and Dillard were material, because if they were true it would cast doubt not just upon Dillard's conviction, but upon the probable cause basis for his original arrest.

In other words, there was ample evidence for two independent incidents that could sustain the enhancement under U.S.S.G. § 3C1.1. It should be noted again, however, that Dillard's below-Guidelines sentence of 60 months would be below-Guidelines even if he were successful in reducing his offense level.

The defendant's conviction and sentence are AFFIRMED.